**In re Mark G. THORSON; Cassandra Thorson, Debtors.**

**Mark G. THORSON, Appellant,**

v.

**CALIFORNIA STUDENT AID COMMISSION, Appellee.**

**BAP No. SC–95–1888–OAsJ.**
**Bankruptcy No. 90–11021–M7.**
**Adv. No. 93–90511–M7.**

United States Bankruptcy Appellate Panel of the Ninth Circuit.

Argued and Submitted Jan. 19, 1996.

Decided April 19, 1996.

John D. Rittenhouse, San Diego, CA, for Appellant.

Irene K. Tamura, Sacramento, CA, for Appellee.

Before: OLLASON, ASHLAND and JONES, Bankruptcy Judges.

## *OPINION*

OLLASON, Bankruptcy Judge:

Debtor Mark G. Thorson ("Thorson") has appealed a summary judgment of nondischargeability of his student loan. Thorson argued that deferments granted post-due date were not required to be deducted from the prepetition repayment period, the length of which determines the loan's dischargeability in bankruptcy. This is a matter of first impression. Finding no support for Thorson's theory, we affirm.

### STATEMENT OF FACTS

The parties stipulated to the following facts. In 1982, Thorson obtained two federal student loans totalling $5,000 from Citibank which were guaranteed by the California Student Aid Commission (the "Commission"), a state agency.

The first monthly payment came due on April 1, 1984. On August 23, 1985, Thorson made his first payment of $619. Four months later, Thorson obtained an in-school deferment for the period January 1, 1986 through December 1, 1986. Under the terms of the notes, Thorson was obligated to make monthly payments from August 1, 1987 through November 30, 1988.[1]

---

1. With each deferment there was a grace period before the next payment was due. In this case, the grace periods have been included in the deferment period. There is no dispute regarding this procedure, however, because the total grace periods would not affect the outcome.

Thorson was granted a forbearance deferment beginning December 1, 1988 through May 31, 1989. Thorson was obligated, under the terms of the notes, to make monthly payments from July 1, 1989 through January 1, 1990.

On January 14, 1990, Thorson filed a chapter 7 bankruptcy petition.[2] At the time of the petition and for purposes of this appeal, § 523(a)(8)(A) provided, in pertinent part:

(a) A discharge under section 727 ... of this title does not discharge an individual debtor from any debt—

. . . .

(8) for an educational loan made, insured, or guaranteed by a governmental unit, or made under any program funded in whole or in part by a governmental unit or a nonprofit institution of higher education,.... unless—(A) such loan first became due before five years (exclusive of any applicable suspension of the repayment period) before the date of the filing of the petition.

11 U.S.C. § 523 (1988).[3]

From the first due date of April 1, 1984 through the petition date of January 14, 1990, there were 69 months of repayment time inclusive of the suspension periods, nine months beyond the 60 months constituting five years' time. Thus, including the suspension periods, the loan debt would be dischargeable. The suspension periods included 24 months. If the 24 months were deducted from the 69 months, the difference would be 45 months—less than five years' time, and the loan debt would be nondischargeable.

On May 11, 1993, the bankruptcy case was reopened to allow Thorson to file a complaint to determine dischargeability of the student loan debt. In February of 1995, the parties agreed to file cross motions for summary judgment and to stipulate to the material facts. Thorson argued a novel legal position to include the deferment periods in the repayment period calculation. He contended that the words "exclusive of any applicable suspension of the repayment period" in § 523(a)(8)(A) necessarily refer to a suspension given before the first payment has become due or has been paid, because "[a] loan obligation can 'first' become due only once." *In re Nunn,* 788 F.2d 617, 619 (9th Cir.1986). At the June 15, 1995 hearing, the bankruptcy court ruled that *Nunn* did not apply and disagreed with Thorson's interpretation on policy grounds:

I think ... as a policy matter that a post-due date suspension should be the type of suspension that statute is talking about; otherwise it would cause ... lenders ... to be reluctant to give these suspensions after the due date has first arrived.

Thorson timely appealed the bankruptcy court's order granting the Commission's motion and denying Thorson's motion for summary judgment, entered July 27, 1995.

### ISSUE

Whether post-due date student loan payment deferments constitute "any applicable suspension[s] of the repayment period" pursuant to § 523(a)(8)(A).

### STANDARD OF REVIEW

An order granting summary judgment is reviewed de novo. *Jones v. Union Pacific Railroad Co.,* 968 F.2d 937, 940 (9th Cir.1992). The standard for summary judgment is established in Fed.R.Bankr.P. 7056/Fed.R.Civ.P. 56, and is only proper "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that

**2.** All references to "chapter" or "section" are to the Bankruptcy Code, 11 U.S.C. §§ 101–1330; references to "rule" are to the Federal Rules of Bankruptcy Procedure ("Fed.R.Bankr.P.") 1001–9036, making applicable certain Federal Rules of Civil Procedure ("Fed.R.Civ.P.").

**3.** In the parties' stipulated facts, they deleted the word "unless" in the statute preceding subsection (A). A true reading of the statute is not possible without the insertion of that word, and

we assume the parties left it out through inadvertence.

This section was amended in November of 1990, by replacing "such loan first became due before five years" with "such loan, benefit, scholarship, or stipend overpayment first became due more than 7 years." Crime Control Act of 1990, Pub.L.No. 101–647, §§ 3621(2), 3631(a), (b), 104 Stat. 4865, 4965–66 (1990).

the moving party is entitled to judgment as a matter of law." *Celotex Corp. v. Catrett*, 477 U.S. 317, 322, 106 S.Ct. 2548, 2552, 91 L.Ed.2d 265 (1986). To the extent the bankruptcy court interpreted statutory law, we review issues of law *de novo*. *Fortney v. United States*, 59 F.3d 117, 119 (9th Cir. 1995); *In re Kim*, 163 B.R. 157, 159 (9th Cir. BAP 1994), *aff'd*, 62 F.3d 1511 (9th Cir.1995).

## DISCUSSION

■ The parties have stipulated to the facts, including the fact that the due date under the terms of the notes was April 1, 1984.

Thorson presents a legal issue. He contends that there can be only one due date in the repayment period, and that is the date the loan first became due. *See Nunn*, 788 F.2d at 618–19. By making his first loan payment, Thorson contends that the stipulated due date of April 1, 1984 became absolute. He further contends that the bankruptcy court's deduction of the 24–month suspension period from the 69–month payment period improperly yields a new due date that is 24 months closer to the bankruptcy petition date. Therefore, as a matter of law, the parenthetical phrase in § 523(a)(8)(A)—"such loan first became due before five years (exclusive of any applicable suspension of the repayment period) before the filing of the petition," necessarily means only suspensions obtained prior to the loan's due date.

■ Thorson challenges the meaning of "any applicable suspension" of § 523(a)(8)(A). The starting point for interpreting a statute is the language of the statute itself. *In re Pilcher*, 149 B.R. 595, 597 (9th Cir. BAP 1993). "Absent a clearly expressed intention to the contrary, that language must ordinarily be regarded as conclusive." *Id.* (quoting *Consumer Product Safety Comm'n v. GTE Sylvania, Inc.*, 447 U.S. 102, 108, 100 S.Ct. 2051, 2056, 64 L.Ed.2d 766 (1980)). Section 523(a)(8)(A) does not define "any applicable suspension"; therefore, Thorson's theory goes beyond the words' plain meaning.

The legislative history of § 523(a)(8)(A) expresses an intent to discharge student loans that have been due and owing for more than five years. S.Rep. No. 989, 95th Cong., 2d Sess. 79 (1978), *reprinted in* 1978 U.S.C.C.A.N. 5787, 5865. Thus, Congress set a fixed time which would end sufficiently long after the completion of the student's studies, but not before the student had started working and theoretically acquiring assets with which to repay the loan. *Nunn*, 788 F.2d at 619.

Section 523(a)(8)(A) was amended in 1979 "to exclude periods of deferment from the calculation of the first five years of the repayment period." The legislative history of this amendment discusses the potential problem of students obtaining deferments under the loan terms, and thereby partially or entirely avoiding payments.

Section 3(2) of the bill would also amend 11 U.S.C. 523(a)(8) to exclude periods of deferment from the calculation of the first five years of the repayment period. This exclusion was contained in former section 439A of the Higher Education Act of 1965, which provided for the nondischargeability in bankruptcy of loans made under the Guaranteed Student Loan Program. Loan programs typically provide periods of deferment during which a borrower's obligation to repay his loan is suspended. Using the Guaranteed Student Loan Program as an example, a student may defer repayment for an unlimited time if the student resumes study, for up to three years if the student serves in the Armed Forces, the Peace Corps or VISTA, and for up to one year if the student is unemployed. Therefore, it is possible for the first five years of the repayment period on a student's loan to run without the student having an actual repayment obligation during all of that period.

S.Rep. No. 230, 96th Cong., 1st Sess. 2–3 (1979), *reprinted in* 1979 U.S.C.C.A.N. 936, 937–38.

Most cases interpreting § 523(a)(8)(A) have held that five years *of payments* must exist between the first due date and the filing of the petition before the loan debt will be dischargeable. *See In re Gibson*, 184 B.R.

716, 719 (E.D.Va.1995) (under current statute, borrower must make seven years' worth of payments); *In re Eckles*, 52 B.R. 433, 434 (E.D.Wis.1985); *In re Rahlf*, 95 B.R. 572, 575 (Bankr.N.D.Ill.1988); *In re Sava*, 1988 WL 140995, *2 (Bankr.D.Md.1988); *In re Williams*, 9 B.R. 1004, 1011 (Bankr.E.D.Va. 1981).

Thorson believes that *Nunn* supports his theory that post-due date suspensions are not applicable for reducing the repayment period under § 523(a)(8)(A). *Nunn* concerned the due date under the statute, specifically whether the due date was that for the first payment or for each installment thereafter. Debtor Nunn's first payment on a student loan was due in March, 1978. Nunn made only a few installment payments, the last payment being made in 1981. Nunn filed for bankruptcy in December of 1983 seeking discharge of the student loan. The bankruptcy court determined that no portion of Nunn's student loan debt was dischargeable, finding that the five-year period then provided in § 523(a)(8)(A) began with Nunn's last actual repayment, or installment, which was made within the five years prior to her bankruptcy. The district court reversed the bankruptcy court, but held dischargeable only those installments that were due and payable prior to the commencement of the five-year period preceding Nunn's filing for bankruptcy. *Nunn*, 788 F.2d at 618. The Ninth Circuit Court of Appeals reversed the district court and set forth a legal standard. It stated that the district court's interpretation "in effect rewrites the section to provide that the five-year period runs from the date *each installment* of the loan first became due, rather than from the date 'such loan first became due.'" *Id.* at 619. "A loan obligation can 'first' become due only once, not several times," the court held. *Id.* Since Nunn's first installment due date fell

outside the five-year period before bankruptcy, the entire loan debt was dischargeable.

*Nunn* did not deal with the parenthetical "exclusive of any applicable suspension of the repayment period." *Nunn* did not stand for the proposition that one may ignore this provision in determining the repayment period for purposes of discharge. Thus, *Nunn* does not control this case.

Unlike *Nunn*, the due date of Thorson's student loan was determined. What the bankruptcy court had to determine subsequently to the due date was whether there were any applicable suspension periods which would then be deducted from the repayment period between the due date and the date of the bankruptcy petition.

Nowhere in the statute or legislative history is a suspension defined as only a deferment if no payments have been made or only if it is a deferment of the first payment due date. Likewise, there is a lack of case law to support Thorson's contention.[4] To the contrary, the term "suspension" has been broadly interpreted by the courts to include any time the original repayment period is set aside either by cessation of payments or modification of payments. *See In re Georgina*, 124 B.R. 562, 564 (Bankr.W.D.Mo.1991); *Eckles*, 52 B.R. at 434; *see also In re Saburah*, 136 B.R. 246, 254 (Bankr.C.D.Cal.1992) (the time that the automatic stay was in effect in the prior chapter 7 case is includable when calculating the applicable suspension period under § 523(a)(8)(A)). The rationale behind the broad interpretation is that to rule otherwise would allow debtors to manipulate the amount of money they must repay before they file for bankruptcy and thereby gain the benefits of the suspension or reduction and still discharge the debt. *Eckles*, 52 B.R. at 435.

Deducting any deferment periods granted before or after payments have been made

---

4. We found one case with similar facts that is not binding, but whose reasoning we find compelling. In *In re Rufo*, 28 C.B.C.2d 1584, 1993 WL 195786 (Bankr.D.R.I.1993), the chapter 7 debtor argued that applicable suspensions were only those prior to the first payment and any suspensions after the first payment should not be counted in figuring total suspension time. The bankruptcy court did not abide such a legally unfounded theory and stated that "[h]ow the Debtor reads the statute as she does remains a mystery...." *Id.*, 28 C.B.C.2d at 1585. Thorson's argument is similarly opaque. *Rufo* further held that Congress did not intend that the debtor could discharge her student loan obligation by making one payment and then obtaining six years and eleven months of deferments. *Id.* at 1586.

serves the same purpose of preventing debtors from seeking bankruptcy merely to avoid their obligation to repay a student loan. This case is a perfect example. Thorson made one payment over a year after the due date. Then he received deferments totaling 24 months. Thorson could conceivably have received several deferments after having made only a few payments. If those periods were not deducted, Thorson would be extending the repayment period beyond the time limitation purposefully put into § 523(a)(8)(A) to prevent such an easy discharge of the student loan debt.

We also agree with the bankruptcy court that limiting applicable suspensions to those of the first payment due would have a chilling effect on lenders, thus defeating the purposes of the student loan program.

Section 523(a)(8)(A) requires, therefore, that any valid suspension during the repayment period be deducted. *In re Barciz*, 123 B.R. 771, 774 (Bankr.N.D.Ohio 1990). The calculation yields a repayment period that has been shrunken by the limiting provision. The due date, therefore, is not an absolute date, because periods in which payments are suspended do not count.

### CONCLUSION

The deferments of Thorson's student loan were valid suspensions of the repayment period. Therefore, the 24 months of suspensions were excludable from the 69 months between the due date and the bankruptcy filing. That calculation reduced the repayment time period to under five years, so that Thorson's loan debt was nondischargeable under § 523(a)(8)(A).

Summary judgment was properly entered in favor of the Commission and denied Thorson where there were no factual issues and the question of statutory interpretation was correctly decided in the Commission's favor. We **AFFIRM** the bankruptcy court's order of July 27, 1995.