ORDERED PUBLISHED

**UNITED STATES BANKRUPTCY APPELLATE PANEL**

**OF THE NINTH CIRCUIT**

| | |
|---|---|
| In re: | ) BAP No.  NC-14-1336-PaJuTa |
| | ) |
| TARRA NICHOLE CHRISTOFF, | ) Bk. No.  13-10808 |
| | ) |
| Debtor. | ) Adv. No.  13-3186 |
| _____ ) | |
| | ) |
| | ) |
| INSTITUTE OF IMAGINAL STUDIES | ) |
| dba MERIDIAN UNIVERSITY, | ) |
| | ) |
| | ) |
| Appellant, | ) |
| | ) |
| v. | ) **O P I N I O N** |
| | ) |
| | ) |
| TARRA NICHOLE CHRISTOFF, | ) |
| | ) |
| | ) |
| Appellee. | ) |
| _____ ) | |

Argued and Submitted on February 19, 2015
at San Francisco, California

Filed - March 27, 2015
_____

Appeal from the United States Bankruptcy Court
for the Northern District of California

Hon. Dennis Montali, U.S. Bankruptcy Judge, Presiding

_____

Appearances:     Scott D. Schwartz of Rust, Armenis & Schwartz, P.C.
                 argued for Appellant Institute of Imaginal Studies
                 d/b/a Meridian University; Lindsay Torgerson of
                 Wine Country Family Law & Bankruptcy Office argued
                 for Appellee Tarra Nichole Christoff.

_____

Before: PAPPAS, JURY, and TAYLOR, Bankruptcy Judges.

PAPPAS, Bankruptcy Judge:

This appeal raises an important issue of first impression concerning the scope of the exception to discharge for student debts in bankruptcy. Creditor Institute of Imaginal Studies d/b/a Meridian University ("Meridian") appeals the summary judgment of the bankruptcy court determining that the debt owed to Meridian by chapter 7[1] debtor Tarra Nichole Christoff ("Debtor") was not excepted from discharge pursuant to § 523(a)(8)(A)(ii). Based upon the plain language of the Bankruptcy Code, we AFFIRM.

## I. FACTS[2]

### A. Relationship of the Parties.

Meridian is a for-profit California corporation which operates a private university licensed under California's Private Post Secondary Education Act of 2009, Cal. Educ. Code § 94800, et seq. If a graduate of Meridian fulfills other post-graduate requirements, the graduate may obtain a license from California to practice as an independent, unsupervised psychologist.

Debtor applied for admission to Meridian in 2002. Meridian agreed to admit Debtor and offered her $6,000 in financial aid to pay a portion of the tuition for that school year. Under this arrangement, Debtor did not receive any actual funds from

---

[1] Unless otherwise indicated, all chapter, section and rule references are to the Bankruptcy Code, 11 U.S.C. §§ 101-1532, and to the Federal Rules of Bankruptcy Procedure, Rules 1001-9037. "Civil Rule" references are to the Federal Rules of Civil Procedure 1-86.

[2] This recitation of the undisputed facts is taken primarily from the bankruptcy court's decision, which neither of the parties has challenged.

Meridian, but instead she received a tuition credit. Debtor signed an enrollment agreement acknowledging Meridian's offer to "finance" $6,000 of the tuition, and she signed a promissory note in favor of Meridian evidencing her obligation. The promissory note provided that the debt for the tuition credit was to be paid by Debtor in installments of $350 per month after Debtor completed her course work or withdrew from Meridian. Interest accrued on the unpaid balance of the note at nine percent per annum, compounded monthly.

In 2003, Debtor submitted a similar application, and Meridian granted her a financial aid award of $5,000 for that school year. As before, Debtor signed a promissory note for $5,000. Again, Debtor did not receive any funds but instead received a tuition credit. The promissory note contained payment terms identical to those in the prior note.

Debtor completed her course work at Meridian, and Debtor's note payments began in October 2005. After making several payments on the notes, in 2009, Debtor sought a deferral of her payments for a period of one year. Meridian granted the extension. Also in 2009, Debtor withdrew from Meridian without completing her dissertation, a requirement for obtaining her degree.

After the extension expired, Debtor did not pay the amounts due under the two promissory notes. Thereafter, Meridian unsuccessfully attempted to collect the balance due from Debtor. Eventually, Meridian and Debtor agreed to submit Meridian's claims to arbitration under a provision in the enrollment agreement. In July 2012, an arbitrator ordered Debtor to pay Meridian the unpaid

-3-

balance due on the promissory notes, $5,950, plus accrued interest.

### B. The Bankruptcy Case and Adversary Proceeding.

Debtor filed a chapter 7 bankruptcy petition on August 19, 2013. Debtor listed Meridian in schedule F as an unsecured, nonpriority creditor. Meridian commenced an adversary proceeding against Debtor seeking a determination by the bankruptcy court that the debt owed by Debtor to Meridian was excepted from discharge pursuant to § 523(a)(8).

On April 30, 2014, Meridian filed a motion for summary judgment. In its motion, Meridian conceded that Debtor's debt did not qualify for an exception to discharge under either § 523(a)(8)(A)(i) or (a)(8)(B).[3] However, it argued that the debt was excepted from discharge under § 523(a)(8)(A)(ii). Debtor disputed that this Code provision applied to her debt to Meridian.[4] The parties appeared at a motion hearing on May 30, 2014, presented their arguments, and the bankruptcy court took the issues under advisement.

On June 11, 2014, the bankruptcy court entered a Memorandum Decision in which it held that Debtor's debt to Meridian did not

---

[3] We agree that Meridian cannot take advantage of these discharge exceptions because it was neither a governmental unit nor a nonprofit institution as required for an exception under § 523(a)(8)(A)(i), nor was the debt in this case a "qualified education loan" as defined by the Internal Revenue Code, a condition for an exception to discharge under § 523(a)(8)(B).

[4] The parties agreed that if the bankruptcy court determined that the Meridian debt qualified for an exception to discharge under § 523(a)(8)(A)(ii), Debtor would be allowed to amend her answer and plead that she could not repay the debt without an "undue hardship".

-4-

qualify for an exception to discharge under § 523(a)(8)(A)(ii). Inst. of Imaginal Studies dba Meridian Univ. v. Christoff (In re Christoff), 510 B.R. 876, 884 (Bankr. N.D. Ca. 2014). In making this ruling, the bankruptcy court noted that the question raised by the motion was an issue of first impression in the Ninth Circuit following enactment of the Bankruptcy Abuse Prevention and Consumer Protection Act of 2005 (BAPCPA).[5] After a thorough review of amended § 523(a)(8) and the cases addressing the issue, the bankruptcy court concluded:

> [b]ecause Debtor's obligations under applicable documents were to pay the amount under the [p]romissory [n]otes, and thereafter the arbitration award, but did not flow from 'funds received' either by her as the student or by Meridian from any other source, the debt is not covered by [§ 523(a)(8)(A)(ii)] and is therefore eligible for discharge in Debtor's discharge.

In re Christoff, 510 B.R. at 884.

Interpreting the "funds received" requirement in § 523(a)(8)(A)(ii), the bankruptcy court explained that "Meridian simply agreed to be paid the tuition later . . . [i]t did not receive any funds, such as from a third party financing source." Id. at 879. The bankruptcy court therefore concluded that, while the transactions between Debtor and Meridian were clearly loans, § 523(a)(8)(A)(ii) does not extend to loans but, instead, grants an exception to discharge for "an obligation to repay funds received." Id. at 879. The bankruptcy court observed that BAPCPA had amended the prior version of § 523(a)(8) and had created a "newly separated [§ 523(a)(8)(A)(ii), which] refers to an

---

[5] Pub. L. No. 109-8, 119 Stat. 23.

'obligation to repay funds received as an educational benefit, scholarship[,] or stipend,' without reference to educational loans or any other kind of loan." Id.

Meridian filed a notice of appeal concerning the Memorandum Decision on June 26, 2014. The bankruptcy court, on July 2, 2014, entered an order granting summary judgment in favor of Debtor and denying Meridian's motion for summary judgment; it also entered a judgment incorporating these rulings. On July 11, 2014, Meridian filed an amended notice of appeal to include the order and judgment entered by the bankruptcy court.

## II. JURISDICTION

The bankruptcy court had jurisdiction under 28 U.S.C. §§ 1334 and 157(b)(2)(I). We have jurisdiction under 28 U.S.C. § 158.

## III. ISSUE

Whether the bankruptcy court erred in holding that the Meridian debt was not excepted from discharge under § 523(a)(8)(A)(ii) because it was not an obligation for "funds received."

## IV. STANDARDS OF REVIEW

We review a bankruptcy court's grant of summary judgment de novo. The President & Bd. of Ohio Univ. v. Hawkins (In re Hawkins), 317 B.R. 104, 108 (9th Cir. BAP 2004), aff'd, 469 F.3d 1316 (9th Cir. 2006); Thorson v. Cal. Student Aid Comm'n (In re Thorson), 195 B.R. 101, 103 (9th Cir. BAP 1996) (citing Jones v. Union Pac. R.R. Co., 968 F.2d 937, 940 (9th Cir. 1992)). According to Civil Rule 56, made applicable to adversary proceedings in Rule 7056, summary judgment is appropriate if there is a showing "that there is no genuine dispute as to any material

-6-

fact and the movant is entitled to judgment as a matter of law." Civil Rule 56(a); <u>Celotex Corp. v. Catrett</u>, 477 U.S. 317, 322 (1986). A trial court, in the exercise of its discretion, may grant a summary judgment for a nonmovant pursuant to Civil Rule 56(f)(1).

"We review de novo the bankruptcy court's application of the legal standard in determining whether a student loan debt is dischargeable." <u>Educ. Credit Mgmt. Corp. v. Jorgensen (In re Jorgensen)</u>, 479 B.R. 79, 85 (9th Cir. BAP 2012) (citing <u>Rifino v. United States (In re Rifino)</u>, 245 F.3d 1083, 1087 (9th Cir. 2001)). "To the extent the bankruptcy court interpreted statutory law, we review the issues of law de novo." <u>In re Thorson</u>, 195 B.R. at 103.

## V. DISCUSSION

### A. Arguments of the Parties.

Meridian argues that the bankruptcy court erred when it interpreted § 523(a)(8)(A)(ii) to require that actual funds be received by a debtor in order for a debt to qualify for an exception to discharge under that provision. According to Meridian, "funds received," as that language is used in § 523(a)(8)(A)(ii), is the equivalent to "loans" received by the debtor, as described in the other provisions of § 523(a)(8). To support this argument, Meridian cites to <u>McKay v. Ingleson</u>, 558 F.3d 888 (9th Cir. 2009), and to <u>Johnson v. Mo. Baptist Coll. (In re Johnson)</u>, 218 B.R. 449 (8th Cir. BAP 1998), a decision cited and relied upon by the Ninth Circuit in <u>McKay</u>. Meridian argues that the bankruptcy court erred in distinguishing these cases because those decisions determined that a "loan" under § 523(a)(8)

-7-

required no funds to be transferred to a debtor. Meridian argues that since the terms "loan" and "funds received" are synonymous as used in § 523(a)(8), McKay and In re Johnson control the outcome in this case.

Debtor points to the difference in the language employed by Congress to delineate what types of student debts are excepted from discharge under § 523(a)(8). While § 523(a)(8)(A)(i) and (B) indeed make "loans" nondischargeable in bankruptcy, absent undue hardship, § 523(a)(8)(A)(ii) applies to a different type of debt: a debtor's "obligation to repay funds received as an educational benefit, scholarship, or stipend [.]" Because Congress did not refer to "loans" in this subsection of the Code, Debtor urges that it was intended to apply to a distinctly different type of debt, an obligation to repay the creditor for "funds received." Therefore, Debtor argues, it is inappropriate to borrow from the logic of the cases construing the "loan" language used in the other student debt exceptions to construe the meaning of "funds received" in § 523(a)(8)(A)(ii).

We agree with Debtor.

**B.    Statutory Interpretation and Exceptions to Discharge.**

Any analysis of the Bankruptcy Code begins with the text of the statute. Ransom v. FIA Card Servs., N.A., 562 U.S. 61, 69 (2011); Danielson v. Flores (In re Flores), 735 F.3d 855, 859 (9th Cir. 2013) (en banc) (citing Miranda v. Anchondo, 684 F.3d 844, 849 (9th Cir. 2011). "Furthermore, 'the words of [the Code] must be read in their context and with a view to their place in the overall statutory scheme.'" In re Flores, 735 F.3d at 859 (quoting Gale v. First Franklin Loan Servs., 701 F.3d 1240, 1244

(9th Cir. 2012)). "If the statutory language is unambiguous and the statutory scheme is coherent and consistent, judicial inquiry must cease." Fireman's Fund Ins. Co. v. Plant Insulation Co. (In re Plant Insulation Co.), 734 F.3d 900, 910 (9th Cir. 2013) (citations and internal quotation marks omitted).

Courts must limit the provisions granting exceptions to discharge to those plainly expressed in § 523(a). Bullock v. BankChampaign, N.A., 133 S. Ct. 1754, 1760 (2013) (noting the "long-standing principle that exceptions to discharge should be confined to those plainly expressed") (internal quotations marks and citations omitted); Hawkins v. Franchise Tax Bd. of Cal., 769 F.3d 662, 666 (9th Cir. 2014) (reminding that "the Supreme Court has interpreted exceptions to the broad presumption of discharge narrowly"); Sachan v. Huh (In re Huh), 506 B.R. 257, 263 (9th Cir. BAP 2014) (en banc) (stating "the exception to discharge provisions of the Bankruptcy Code are interpreted strictly in favor of debtors"); Benson v. Corbin (In re Corbin), 506 B.R. 287, 291 (Bankr. W.D. Wa. 2014) (observing, in a § 523(a)(8) case, that "[c]ourts construe exceptions to discharge strictly against a creditor and liberally in favor of the debtor").

**B.   The Pre-BAPCPA § 523(a)(8).**

The student debt exception to discharge, embodied in § 523(a)(8), has been amended several times over the years, most recently by BAPCPA in 2005.

Prior to BAPCPA, § 523(a)(8) provided that a bankruptcy discharge would not apply to a debt for:

>              an educational benefit overpayment or loan
>              made, insured or guaranteed by a governmental
>              unit, or made under any program funded in

-9-

> whole or in part by a governmental unit, or nonprofit institution, or for an obligation to repay funds received as an educational benefit, scholarship, or stipend, unless excepting such debt from discharge under this paragraph will impose an undue hardship on the debtor and the debtor's dependents.

In re Hawkins, 317 B.R. at 108 (quoting § 523(a)(8)).

Interpreting this version of § 523(a)(8), the Panel stated,

> [g]enerally speaking, debts that are potentially nondischargeable under § 523(a)(8) fall into two categories: 1) debts for educational benefit overpayments or loans made, insured, or guaranteed by a governmental unit or nonprofit institution; or 2) debts for obligations to repay funds received as an educational benefit, scholarship[,] or stipend.

Id. at 109 (citing Mehlman v. N.Y. City Bd. of Educ. (In re Mehlman), 268 B.R. 379, 383 (Bankr. S.D.N.Y. 2001)).

In In re Hawkins, the Panel examined an agreement between the debtor and Ohio University wherein the debtor agreed, in exchange for admission to the University's medical school, that when she completed her studies she would practice medicine in Ohio for at least five years after licensure. 317 B.R. at 107. If she failed to do this, the agreement provided that she would pay liquidated damages to the University. Id. The debtor graduated but promptly moved to a different state. Id. The University sued the debtor in state court and obtained a money judgment for the liquidated damages specified in the agreement. Id. The debtor filed for chapter 7 relief, and the University sought a determination from the bankruptcy court that the judgment debt was excepted from discharge under § 523(a)(8). Id. at 108. Applying § 523(a)(8) to these facts, the Panel addressed both categories of debt covered by the discharge exception. Id. at 110-11.

First, the Panel concluded that the agreement between the

-10-

debtor and the University was not an "educational loan" because "while an educational loan need not include an actual transfer of money . . . to [the d]ebtor, in order for it to fall within the definition of . . . § 523(a)(8), the loan instrument must sufficiently articulate definite repayment terms and the repayment obligation must reflect the value of the benefit actually received [by the debtor], rather than some other ill defined measure of damages or penalty." Id. at 110 (emphasis deleted).

Next, the Panel considered whether the agreement created a debt for "an obligation to repay funds received as an educational benefit." Id. at 112. The Panel quickly concluded that it did not, "because the plain language of this prong of the statute requires that a debtor receive actual funds in order to obtain a nondischargeable educational benefit." Id. (citing Cazenovia Coll. v. Renshaw (In re Renshaw), 229 B.R. 552, 555 n.5 (2d Cir. BAP 1999), aff'd, 222 F.3d 82 (2d Cir. 2000)). The University appealed the BAP's decision and the Ninth Circuit affirmed, adopting the opinion of the BAP as its own. See Ohio Univ. v. Hawkins (In re Hawkins), 469 F.3d 1316, 1317 (9th Cir. 2006) ("We adopt the opinion of the BAP, which is reported at 317 B.R. 104, and affirm its judgment.").

A few years later, the Ninth Circuit again addressed whether an agreement between a student and a college constituted a "loan" for purposes of the pre-BAPCPA version of § 523(a)(8). In McKay v. Ingleson, 558 F.3d 888, 889 (9th Cir. 2009), the court reviewed an agreement between the debtor and Vanderbilt University that deferred payment of the debtor's tuition and costs of other "educational services" to monthly bills to be sent to the debtor.

-11-

Id. If the debtor did not pay the bills as they became due, a late fee would be assessed. Id. The debtor did not pay the bills as agreed and later filed for bankruptcy relief. A couple of years after the debtor received her discharge, the University sued the debtor in state court to recover the amounts owed under the agreement. In response, the debtor commenced an adversary proceeding against the University in the bankruptcy court claiming that the University violated the discharge injunction of § 524(a) by prosecuting the state court action. Id. The bankruptcy court, and later the district court on appeal, concluded that no violation of the discharge injunction occurred because the debt at issue was excepted from discharge under § 523(a)(8). Id. The Ninth Circuit affirmed, reasoning that the agreement between the parties was a nondischargeable "loan" under § 523(a)(8), and that it did not matter that no actual money had changed hands between the parties under their arrangement. Id. at 890. In explaining its decision, the court cited to In re Johnson, 218 B.R. 449 (8th Cir. BAP 1998). Id. The court also cited to the BAP's opinion in In re Hawkins for the proposition that the amount of the loan must be based on the amount of benefit the debtor received; the court concluded that the "loan" in McKay complied with that requirement. Id. at 891.

In re Johnson, the decision relied upon by the Ninth Circuit in McKay, addressed what constituted a "loan" under the pre-BAPCPA version of § 523(a)(8): "Since the parties stipulate that the [c]ollege is a non-profit institution and that the credit was extended for educational purposes . . . the only issue presently on appeal is whether the [c]ollege's extension of credit

-12-

was a loan." In re Johnson, 218 B.R. 450-51. In re Johnson focused on a debt represented by a promissory note, executed to evidence the debtor's obligation to a college to pay for tuition, books, and other expenses. Id. at 450. The debtor defaulted on the note and filed a chapter 13 case. Id. The college filed an adversary proceeding in the debtor's bankruptcy case asking the bankruptcy court to declare that the debt represented by debtor's note was excepted from discharge. Id. The bankruptcy court concluded that the debt was a "loan" for purposes of § 523(a)(8), and the Eighth Circuit BAP agreed. Id. The panel rejected the debtor's argument that the note was not a "loan" because no funds had ever been given to him by the college:

> [W]e conclude[] that the arrangement between [the debtor] and the [c]ollege constitutes a loan . . . . [B]y allowing [the debtor] to attend classes without prepayment, the [c]ollege was, in effect, 'advancing' funds . . . to [the debtor] . . . [and i]t is immaterial that no money actually changed hands.

Id. at 457.

It is important to note that the BAP in In re Johnson, as relied upon by the Ninth Circuit in McKay, acknowledged that another avenue may have existed for the college to obtain an exception to discharge under § 523(a)(8), characterizing the note as "an obligation to repay funds received as an educational benefit"; however, the panel determined it need not venture down that path because the debt arising from the agreement with the debtor was determined to be an educational benefit "loan" made by a nonprofit or a governmental unit.[6] 218 B.R. at 450. By

---

[6] Of course, the college/creditor in In re Johnson was a nonprofit organization. See In re Johnson, 218 B.R. 450. (stating the "parties stipulate that the [c]ollege is a non-profit institution"). Similarly, Vanderbilt University is a nonprofit institution.

-13-

contrast, in <u>In re Hawkins,</u> the Panel was required to decide whether the agreement before it created "an obligation to repay funds received as an educational benefit" because it had concluded the agreement was not a "loan" under the statute. 317 B.R. at 112. In addressing this issue, the Panel stated "the plain language of this prong of the statute requires that a debtor <u>receive actual funds</u> in order to obtain a nondischargeable benefit." <u>Id.</u> (citations omitted; emphasis added). The Panel found this requirement was not satisfied because no "actual funds" were received by the debtor in consideration of her admission and education at the medical school. <u>Id.</u>

## C. **Enter BAPCPA.**

As a result of the Code amendments in BAPCPA, since 2005, § 523(a)(8) has provided that a debtor may not discharge a debt:

> unless excepting such debt from discharge under this paragraph would impose an undue hardship on the debtor and the debtor's dependents, for—
>
> (A)(i) an educational benefit overpayment or loan made, insured, or guaranteed by a governmental unit or nonprofit institution; or
>
> (ii) an obligation to repay funds received as an educational benefit, scholarship, or stipend; or
>
> (B) any other educational loan that is a qualified education loan, as defined in section 221(d)(1) of the Internal Revenue Code of 1986, incurred by a debtor who is an individual.[7]

---

[7] Under § 523(a)(8)(B) to be a "qualified education loan" under 26 U.S.C. § 221(d)(1), it must, among other things, be a debt for a "qualified higher education expense," as defined by 26 U.S.C. § 221(d)(2), which is the "costs of attendance . . . at an eligible educational institution." An "eligible educational institution" is one as defined by 26 U.S.C. § 25A(f)(2), which provides an "'eligible educational institution' means an

(continued...)

-14-

As can be seen, many of the statute's former attributes survived BAPCPA's revisions. On the other hand, there were some additions to its text, and there was also a clear restructuring of the statute.

Since enactment of BAPCPA, neither the Ninth Circuit nor this Panel has published decisions interpreting § 523(a)(8)(A)(ii). And only one published decision, other than the bankruptcy court's decision at issue in this appeal, was located from bankruptcy courts in the Ninth Circuit interpreting § 523(a)(8)(A)(ii). Benson v. Corbin (In re Corbin), 506 B.R. 287 (Bankr. W.D. Wa. 2014).[8] In In re Corbin, the bankruptcy court explained that, post-BAPCPA, this Code provision:

> protects four categories of educational claims from discharge: (1) loans made, insured, or guaranteed by a governmental unit; (2) loans made under any program partially or fully funded by a governmental unit or nonprofit institution; (3) claims for funds received as an educational benefit, scholarship, or stipend; and (4) any "qualified educational loan" as that term is defined in the Internal Revenue Code.

506 B.R. at 291 (citing Rumer v. Am. Educ. Servs. (In re Rumer), 469 B.R. 553 (Bankr. M.D. Pa. 2012)). The bankruptcy court explained that § 523(a)(8)(A)(ii) "was added, covering loans made

_____

[7](...continued)
institution - (A) which is described in section 481 of the Higher Education Act of 1965 (20 U.S.C. 1088) . . . (B) which is eligible to participate in a program under title IV of such Act." An "eligible program" is further defined at 20 U.S.C. § 1088(b).

[8] In addition, only one unpublished decision in this circuit has tackled this chore. In a case that involved Meridian, relying heavily upon the bankruptcy court's decision here, the bankruptcy court declined to grant an exception to discharge. Inst. of Imaginal Servs. v. Coelho (In re Coelho), No. 13-10975, 2014 WL 3858514 (Bankr. N.D. Ca. Aug. 4, 2014).

-15-

by nongovernmental and profit-making organizations . . . ." Id. at 296. Canvassing the out-of-circuit bankruptcy court decisions, the court noted that they "pay no attention to who the lender is, but focus instead [under § 523(a)(8)(A)(ii)] on whether, in the plain language of the subsection, the obligation is 'to repay funds received as an educational benefit' as reflected by the debtor's agreement and intent to use the funds at the time the obligation arose." Id. at 296-97 (citing Roy v. Sallie Mae (In re Roy), 2010 WL 1523996 (Bankr. D.N.J. Apr. 15, 2010); Carow v. Chase Student Loan Serv. (In re Carow), 2011 WL 802847 (Bankr. D.N.D. Mar. 2, 2011); Skipworth v. Citibank Student Loan Corp. (In re Skipworth), 2010 WL 1417964 (Bankr. N.D. Ala. Apr. 1, 2010)).

Given the lack of case law, the bankruptcy court set out to apply post-BAPCPA § 523(a)(8)(A)(ii) to the facts before it. In re Corbin involved cash advances from a third-party lender to the debtor to attend college made, in part, because the debtor's co-worker had agreed to co-sign the loan. 506 B.R. at 290. The lender later notified the co-signer that the debtor was not paying the loan. Id. The co-signer paid the loans and sued the debtor in state court to recover the amounts he had paid the lender. Id. The debtor then filed a bankruptcy case, and the co-signer commenced an adversary proceeding against the debtor arguing that the debt owed by the debtor to the co-signer was excepted from discharge under both § 523(a)(8)(A)(i) and (a)(8)(A)(ii). Id. The bankruptcy court declined to hold that this arrangement qualified for an exception from discharge under § 523(a)(8)(A)(i) based upon Ninth Circuit authority on subrogated claims. Id. at 295-96 (citing Nat'l Collection Agency v. Trahan, 624 F.2d 906

-16-

(9th Cir. 1980)). However, the bankruptcy court concluded that the debt was excepted from discharge under § 523(a)(8)(A)(ii), reasoning that because the debtor

> intended to and did use the funds she received to pay for educational expenses . . . this [c]ourt concludes that the provisions of an accommodation, in order to secure for a student funds for the purpose of paying educational expenses, gives rise to an obligation on the part of the debtor to repay funds received as an educational benefit once the co-signer is required to honor its obligation to pay the debt.

Id. at 297-98.

Of course, the In re Corbin debtor actually received funds from the lender to pay for her education; the facts here are different.

**D.    Application of § 523(a)(8)(A)(ii) to Meridian's Debt**

We agree with the bankruptcy court that the language of § 523(a)(8) is plain and that it must be read in context with a view to the overall statutory scheme. Moreover, as instructed by the Supreme Court and Ninth Circuit, we must construe § 523(a) narrowly, limiting this discharge exception to those debts described in the statute. Bullock, 133 S. Ct. at 1760; Hawkins, 769 F.3d at 666; In re Huh, 506 B.R. at 263. Finally, we must construe the provisions of § 523(a)(8) that were found in the pre-BAPCPA version of that statute in accord with the Ninth Circuit authorities interpreting them. Doing all this, we conclude that the debt represented by Meridian's arbitration award against Debtor is not excepted from discharge under § 523(a)(8)(A)(ii). As a result, the bankruptcy court did not err in granting summary judgment to Debtor, and denying Meridian's motion for summary

-17-

judgment.

Section 523(a)(8)(A)(ii) plainly provides that a bankruptcy discharge will not impact "an obligation to repay funds received as an educational benefit, scholarship, or stipend." It is undisputed that the agreements between Meridian and Debtor constitute an "obligation to repay" "educational benefits" provided by Meridian to Debtor. However, § 523(a)(8)(A)(ii) requires more. To except a debt from discharge under this subsection, the creditor must demonstrate that the debtor is obliged to repay a debt for "funds received" for the educational benefits. The phrase "funds received" has been interpreted by the BAP, in an opinion which was as adopted by the Ninth Circuit as its own, to require "that a debtor receive actual funds in order to obtain a nondischargeable benefit." In re Hawkins, 317 B.R. at 112 (emphasis added); accord In re Oliver, 499 B.R. 617, 625 (Bankr. S.D. Ind. 2013) (holding under § 523(a)(8)(A)(ii), "[i]n order to be obligated to repay funds received, [the] [d]ebtor had to have received funds in the first place.") (emphasis in original). Because the In re Hawkins decision construed the very same language of the statute implicated here, we conclude that In re Hawkins controls the outcome in this case notwithstanding that BAPCPA later amended § 523(a)(8). See Ball v. Payco-General Am. Credits, Inc. (In re Ball), 185 B.R. 595, 597 (9th Cir. BAP 1995) ("We will not overrule our prior rulings unless a Ninth Circuit Court of Appeals decision, Supreme Court decision or subsequent legislation has undermined those rulings."). That the arrangement between the parties in In re Hawkins was dissimilar to the agreement in this case is of no consequence, and renders that

-18-

decision no less binding, concerning the proper construction of § 523(a)(8)(A)(ii). This is so because In re Hawkins construed the very same statutory language implicated here, and because the Panel and the Circuit have concluded that this language requires that "a debtor receive actual funds." Id. at 112.

This result is bolstered by the changes made to § 523(a)(8) by Congress in BAPCPA. As noted above, the exact wording used in amended § 523(a)(8)(A)(ii) was formerly a part of § 523(a)(8). However, BAPCPA set off the "obligation to repay funds received" language from the other provisions of § 523(a)(8) in a new subsection. We agree with the bankruptcy court, that in restructuring the discharge exception in this fashion, Congress created "a separate category delinked from the phrases 'educational benefit or loan' in § 523(a)(8)(A)(i) and 'any other educational loan' in § 523(a)(8)(B)." In re Christoff, 510 B.R. at 882. Put another way, "new" § 523(a)(8)(A)(ii), now standing alone, excepts from discharge only those debts that arise from "an obligation to repay funds received as an educational benefit," and must therefore be read as a separate exception to discharge as compared to that provided in § 523(a)(8)(A)(i) for a debt for an "educational overpayment or loan" made by a governmental unit or nonprofit institution or, in § 523(a)(8)(B), for a "qualified education loan."

Meridian's arguments conflating "loan" as used in § 523(a)(8)(A)(i) and (a)(8)(B), and as interpreted by McKay and In re Johnson with "an obligation to repay funds received" as provided in § 523(a)(8)(A)(ii), are unconvincing. According to Meridian, "[t]here is no reason why the word 'funds' should not be

-19-

interpreted in the same light that 'loans' has been interpreted in prior cases in the Ninth Circuit . . . ." Appellant's Op. Br. at 14. In effect, Meridian argues that we should read § 523(a)(8)(A)(ii) to say "loans received" as opposed to "funds received." But this we must not do. See Conn. Nat'l Bank v. Germain, 503 U.S. 249, 253-54 (1992) ("[I]n interpreting a statute a court should always turn first to one, cardinal canon before all others. We have stated time and again that courts must presume that a legislature says in a statute what it means and means in a statute what it says there.") (citations omitted). Instead, we must presume that, in organizing the provisions of § 523(a)(8) as it did in BAPCPA, Congress intended each subsection to have a distinct function and to target different kinds of debts.[9]

We are also unpersuaded by Meridian's reliance on those bankruptcy cases that, perhaps inadvertently, imprecisely quote the provisions of the discharge exception statute as applying to "loans received," as opposed to the "obligation to repay funds received" dealt with by § 523(a)(8)(A)(ii). See, e.g., In re Rumer, 469 B.R. at 561 (stating "loans received as an educational benefit, scholarship, or stipend" are excepted from discharge);

---

[9] On this point, we agree with Debtor's counsel's statement at oral argument that § 523(a)(8)(A)(ii) is not a "catch-all" provision designed to include every type of credit transaction that bestows an educational benefit on a debtor. Instead, this subsection includes a condition, distinct from those in the other subsections of § 523(a)(8), that must be fulfilled. In re Hawkins held that this unique requirement, that "funds [be] received" by the debtor, mandates that cash be advanced to or on behalf of the debtor. In light of the many programs available to students which provide cash benefits to students, like veteran's educational benefits, stipends for teaching assignments, and cash scholarships, it is not absurd to assume that Congress intended the scope of § 523(a)(8)(A)(ii) to target obligations other than those arising from traditional student loans.

-20-

see also Beesley v. Royal Bank of Canada (In re Beesley), 2013 WL 5134404 (Bankr. W.D. Pa. Sept. 13, 2013) (quoting Rumer and its misstatement of the law); Liberty Bay Credit Union v. Belforte (In re Belforte), 2012 WL 4620987 (Bankr. D. Mass. 2012) (same). In addition, as observed by the bankruptcy court, the other cases relied upon by Meridian are distinguishable because they all dealt with cases where the debtor actually received funds. See, e.g., In re Corbin, 506 B.R. at 287; Brown v. Rust (In re Rust), 2014 WL 1796154 (Bankr. E.D. Ky. May 6, 2014); Maas v. Northstar Educ. Fin., Inc. (In re Mass), 497 B.R. 863 (Bankr. W.D. Mich 2013); In re Beesley, 2013 WL 5134404; In re Belforte, 2012 WL 4620987; In re Carow, 2011 WL 802847; Sensient Techs. Corp. v. Baiocchi (In re Baiocchi), 389 B.R. 828 (Bankr. E.D. Wis. 2008). Finally, while we have reviewed the other decisions cited by Meridian that, arguably, reach a different conclusion than we do here, because the courts' analysis and reasoning in those cases is not fully developed, we find them unpersuasive. See In re Roy, 2010 WL 1523996; The Rabbi Harry H. Epstein School, Inc. v. Goldstein (In re Goldstein), 2012 WL 7009707 (Bankr. N.D. Ga. Nov. 25, 2012).

Simply put, because Debtor did not actually receive any funds, Meridian's debt is not excepted from discharge under § 523(a)(8)(A)(ii).

## VI. CONCLUSION

The bankruptcy court did not err in granting summary judgment to Debtor. We therefore AFFIRM the decision of the bankruptcy court.