In re Bradley Scott McCLURE and Heather McClure, Debtors.

Bradley Scott McCLURE, Plaintiff,

v.

ACTION CAREER TRAINING, Defendant.

Bankruptcy No. 596–50477–13.

Adversary No. 596–5057.

United States Bankruptcy Court, N.D. Texas, Lubbock Division.

July 24, 1997.

Becky Miller, Lubbock, TX, for Debtors.

James R. Gravely, Abilene, TX, for Action Career Training.

BANKR. P. 7052 which is made applicable to Contested Matters by FED R. BANKR. P. 9014. This Memorandum will be published.

1. This court has jurisdiction of this matter under 28 U.S.C. § 1334(a), 28 U.S.C. § 157(a), and

Walter O'Cheskey, Lubbock, TX, Chapter 13 Trustee.

## MEMORANDUM OF OPINION ON DEBTOR'S COMPLAINT TO DETERMINE DISCHARGEABILITY OF STUDENT LOAN

JOHN C. AKARD, Bankruptcy Judge.

Bradley McClure, one of the Debtors in the captioned Chapter 13 proceeding, seeks to discharge a debt of $1,721.34 owed on a promissory note executed in favor of Action Career Training (ACT) that was designated for educational purposes by ACT. The court finds that the debt to ACT is subject to discharge in these Debtors' Chapter 13 case.[1]

### FACTS

On or about April 1, 1993 Mr. McClure enrolled in a ten week truck driving school sponsored by ACT in Merkel, Texas. ACT's training school is a for-profit business. Mr. McClure paid ACT $1,000.00 and signed a promissory note in favor of ACT in the amount of $1,351.00 for payment of tuition and fees. ACT designated the purpose of the loan as educational. In return for the $1,000.00 and the promissory note, ACT provided classroom training and on-the-road truck-driving instruction to Mr. McClure. In addition, ACT provided motel accommodations during the ten week training period. Mr. McClure received a certificate of completion from ACT on May 20, 1993.

On May 1, 1996, the Debtors filed for relief under Chapter 13 of the Bankruptcy Code. On November 4, 1996, Mr. McClure filed this adversary proceeding seeking a determination that his financial obligation to ACT is dischargeable in bankruptcy. At the time he filed this adversary proceeding, Mr. McClure worked as a truck driver for Plains Gas Co. The parties stipulated that although the funds were for an educational purpose, the loan was not made under any program fund-

Miscellaneous Rule No. 33 of the Northern District of Texas contained in Order of Reference of Bankruptcy Cases and Proceedings *Nunc Pro Tunc* dated August 3, 1984. This is a core proceeding pursuant to 28 U.S.C. § 157(b)(1), (b)(2)(I).

ed in whole or in part by a governmental unit or non-profit institution. ACT seeks to have the debt declared nondischargeable as an educational benefit under § 523(a)(8) of the Bankruptcy Code.[2]

## STATUTES

Section 523 states in pertinent part:

(a) A discharge under section 727, 1141, 1228(a), 1228(b), or 1328(b) of this title does not discharge an individual debtor from any debt—

>(8) for any educational benefit overpayment or loan made, insured or guaranteed by a governmental unit, or made under any program funded in whole or in part by a governmental unit or non-profit institution, or for an obligation to repay funds received as an educational benefit, scholarship or stipend.

Section 1328 states in pertinent part:

(a) As soon as practicable after the completion by the debtor of all payments under the plan ... the court shall grant the debtor a discharge of all debts provided for by the plan or disallowed under section 502 of this title, except any debt—

. . .

>(2) of the kind specified in paragraph (5), (8), or (9) of section 523(a) or 523(a)(9) of this title.

## DISCUSSION

### I. Issue

The legal issue before this court is whether Mr. McClure's debt to ACT is or constitutes "any debt ... for an obligation to repay funds received as an educational benefit, scholarship or stipend" which is nondischargeable under § 523(a)(8).[3] It is important to determine the issue of dischargeability of the debt at this time because, with certain limitations, this court permits student loans to be specially classified so that they can be paid in full during the plan. If the debt to ACT were found to be nondischarge-

able after the plan were completed, and ACT was not paid in full during the plan, the balance of the debt would still be owed to ACT pursuant to § 1328(a)(2).

ACT argues that the debt is nondischargeable under a plain reading of § 523(a)(8) as amended by The Crime Control Act of 1990. ACT states that the 1990 amendment expanded the statute to make nondischargeable any loan used for an educational purpose, or to facilitate a student's education. Therefore, ACT reasons that the promissory note is "an obligation to repay funds received as an educational benefit" and, as such, should be nondischargeable.

The Debtors urge the court to find that only loans insured by a governmental unit, or issued under any program funded in whole or in part by a government unit or non-profit institution are nondischargeable under § 523(a)(8). Therefore, ACT's claim would merely be a debt owed to an unsecured creditor and, thus, is fully dischargeable.

### II. Legislative History

#### A. The Bankruptcy Reform Act of 1978

**(8) to a governmental unit, or a non-profit institution of higher education, for an educational loan.**

Congress passed The Bankruptcy Reform Act of 1978 in which it chose to except certain debts from discharge. Pub.L. No. 95–598, 92 Stat. 2549 (1978). The Commission on the Bankruptcy Laws was aware of individuals who borrowed money to attend school and then declared bankruptcy to discharge their debt although they were on the brink of a new career. The Commission found "that not only is this reprehensible but that it poses a threat to the continuance of educational loan programs." See § 4–506(8) of the proposed Act.

Congress added this subsection to § 523(a) in order to protect the United States Treasury, as well as to protect the solvency of the guaranteed student loan program. By enact-

---

2. The Bankruptcy Code is 11 U.S.C. § 101 *et seq.* References to section numbers are references to sections in the Bankruptcy Code.

3. The court adopts the stipulations of the parties contained in the joint pretrial order received February 7, 1997. The court will recite only those portions of the order necessary to a decision in this matter.

ing § 523(a)(8), Congress sought principally to protect government entities and nonprofit institutions of higher education—organizations which lend money or guarantee loans to individuals for educational purposes—from bankruptcy discharge. *Santa Fe Med. Servs., Inc. v. Segal,* 57 F.3d 342, 348 (3d Cir.1995). Although there was little discussion about § 523(a)(8), legislative intent is best shown by Representative Ertel's statement to the House of Representatives. He said the purpose of the provision was "to keep our student loan programs intact...." He further stated that "without this amendment, we are discriminating against future students, because there will be no funds available for them to get an education." *In re Pelkowski,* 990 F.2d 737, 742 (3d Cir.1993) (citing 124 CONG. REC. 1791–92 (1978)). This act made dischargeable only educational loans owing to a government unit or a nonprofit institution of higher education. 124 CONG. REC. 32399 (1978). This version of the statute would make the debt to ACT dischargeable because ACT is neither a government institution nor a nonprofit institution of higher education.

### B. Bankruptcy Act–Student Loan Debts (1979)

(8) **for an educational loan made, insured or guaranteed by a governmental unit, or made under any program funded in whole or in part by a governmental unit or a nonprofit institution of higher education.**

In 1979, Congress amended the statute in order to close a gap inadvertently left when the 1978 act repealed a section of the Higher Education Act of 1965. This amendments purpose was to provide for equal treatment of student loans in the context of bankruptcy nondischargeability proceedings. S.REP. No. 96–230 at 1 (1979), *reprinted in* 1979 U.S.C.C.A.N. 936. In addition, it expanded the types of obligations covered. This version of the statute also bars ACT's claim because the loan was not made, insured, or guaranteed by the government or a nonprofit institution.

### C. Bankruptcy Amendments and Federal Judgeship Act of 1984

(8) **for an educational loan made, insured, or guaranteed by a governmental unit, or made under any program funded in whole or in part by a governmental unit or a non-profit institution.**

In 1984 Congress expanded § 523(a)(8) by removing the words "of higher education." Bankruptcy Amendments and Federal Judgeship Act of 1984, Pub.L. No. 98–353, § 454(a)(2), 98 Stat. 333 (1984) (amending 11 U.S.C. § 523(a)(8) (1982)). This change effectively eliminated the inference that the Code section applied only to nonprofit institutions associated with higher education. This expansion of the amendment only protects programs funded at least partially by governmental units or nonprofit institutions, so this change does not benefit ACT.

### D. The Crime Control Act of 1990

(8) **for any educational benefit overpayment or loan made, insured or guaranteed by a governmental unit, or made under any program funded by in whole or in part by a governmental unit or nonprofit institution, or for any obligation to repay funds received as an educational benefit, scholarship or stipend.**

The last change to § 523(a)(8) came in The Crime Control Act of 1990. The amended act expanded the categories of educational loans and scholarships excepted from discharge. Pub.L. No. 101–647, 104 Stat. 4789 (1990). This broadening of the statute is what ACT claims makes Mr. McClure's debt nondischargeable. ACT argues that it provided an educational benefit to Mr. McClure. Thus, the debt should be nondischargeable.

In examining the legislative history of this amendment to § 523(a)(8), the court was unable to find any hint that Congress intended to expand the scope of the statute to include educational benefits provided by for-profit businesses. ACT failed to provide the court with any legislative history to support its interpretation of the statute.

### III. ANALYSIS

The court recognizes that ACT is correct in asserting that when interpreting a statute, this court must abide by the plain meaning of the statute and may only deviate

988

from it if the plain language would lead to absurd results or if such an interpretation would defeat the intent of Congress. *Demarest v. Manspeaker*, 498 U.S. 184, 111 S.Ct. 599, 112 L.Ed.2d 608 (1991). However, the court must narrowly construe exceptions to dischargeability of debts against the creditor and in favor of the debtor. *Boyle v. Abilene Lumber, Inc. (In re Boyle)*, 819 F.2d 583, 588 (5th Cir.1987) (citation *omitted*). Additionally, in the instant case, following the creditor's interpretation of the plain meaning of the statute would undermine the apparent intent of Congress to keep our federally sponsored student loan programs intact. 124 CONG. REC. 1791–92 (1978).

■ Congress enacted an exception for the dischargeability of student loans because some individuals took advantage of the federal government's guaranteed student loan programs. They borrowed money to finance their education, which the government guaranteed to pay. Subsequently, they filed bankruptcy to have their obligations wiped out. As a result, the government gave these individuals a "free ride." Congress decided that this was inequitable to taxpayers and it enacted the contested statute. However, there is no record showing that Congress intended to protect for-profit businesses from bad loans. Although Congress expanded the reach of the contested statute in order to provide uniformity of treatment and eliminated the higher education requirement, there is no indication that Congress intended any of the amendments to apply to for-profit businesses in no way connected to the government guaranteed student loan program. ACT did not provide the court with any case law on point, nor was the court able to find any. The legislative history shows that the statute is a protective measure designed to safeguard the United States Treasury and keep student loan programs intact. *See* 124 CONG. REC. 32399 (1978).

If this court were to expand the reach of § 523(a)(8) to for-profit businesses, it would be creating law which would make previously dischargeable debts nondischargeable. For instance, if a student were to charge college textbooks on a credit card and then file for bankruptcy, the credit card company could claim that the debt was nondischargeable. According to the legislative history of § 523(a)(8), this result would be incompatible with Congress' intent.

In order to find for the creditor, this court would have to find a debt owed to a for-profit creditor is nondischargeable because it was received as an educational benefit. This court believes that although ACT provided a valuable service, the company does not exist solely to provide educational benefits. It exists in order to make its owners a profit by providing a service that is in demand. ACT offers loans in order to broaden its base of potential customers. This is akin to a furniture store which extends credit to high risk debtors in order to sell more furniture. Although many of the credit risks pay up, some do not. That is a risk a business must take if it thinks that the benefit outweighs the risk. This court declines to offer ACT protection under an umbrella created by Congress in order to protect government programs designed to allow individuals to further their education who otherwise might not be able to do so.

## IV. CONCLUSION

In order for this court to find the debt to ACT nondischargeable it would be necessary to expand § 523(a)(8) to any loan which can be said to provide an educational benefit. The court finds that this would be outside the intent of Congress, and thus refuses to broaden § 523(a)(8). The court holds the debt dischargeable.

ORDER ACCORDINGLY.[4]

---

4. This memorandum shall constitute Findings of Fact and Conclusions of Law pursuant to FED. R.

BANKR.P. 7052. This Memorandum will be published.