**IN RE: Scott D. DUFRANE, Debtor.**

**Scott D. Dufrane, Plaintiff,**

v.

**Navient Solutions, Inc., et al., Defendants.**

**Case No. 9:15–bk–11839–PC Adversary No. 9:15–ap–01074–PC**

United States Bankruptcy Court, C.D. California, **Northern Division.**

Date: February 16, 2017, Time: 10:00 a.m., Place: United States Bankruptcy Court, Courtroom # 201, 1415 State Street, Santa Barbara, CA 93101

Signed March 23, 2017

---

Brian Nomi, Esq., Camarillo, CA, W. Mark Burnette, Esq., Ocala, FL, Attorneys for Plaintiff, Scott D. Dufrane.

Randall P. Mroczynski, Esq., Cooksey Toolen Gage Duffy & Woog, Costa Mesa, CA, Attorney for SunTrust Bank, N.A.

## MEMORANDUM RE: DEFENDANT SUNTRUST BANK, N.A.'S MOTION TO DISMISS SECOND AMENDED COMPLAINT AS TO DEFENDANT SUNTRUST BANK, N.A. PURSUANT TO FED. R. CIV. PROC. 12(b)(6)

Peter H. Carroll, United States Bankruptcy Judge

Defendant, SunTrust Bank, N.A. ("SunTrust") seeks dismissal of the Second Amended Complaint by Debtor to Determine Dischargeability of Debt Pursuant to 11 U.S.C. § 523(a)(8)[1] ("Complaint") filed by Plaintiff, Scott D. Dufrane ("Dufrane") insofar as it seeks affirmative relief from SunTrust in this adversary proceeding. Having considered Dufrane's Complaint in light of the papers[2] and arguments of

---

1. Unless otherwise indicated, all "Code," "chapter" and "section" references are to the Bankruptcy Code, 11 U.S.C. §§ 101–1330. Pub. L. 109–8, 119 Stat. 23 (2005). "Rule" references are to the Federal Rules of Bankruptcy Procedure ("FRBP"), which make applicable certain Federal Rules of Civil Procedure ("F.R.Civ.P."). "LBR" references are to the Local Bankruptcy Rules of the United States Bankruptcy Court for the Central District of California ("LBR").

2. The papers are: (1) Complaint [Dkt. # 87] filed November 9, 2016; (2) Notice of Motion and Motion to Dismiss Second Amended Complaint as to Defendant SunTrust Bank, N.A. Pursuant to Fed. R. Civ. Proc. 12(b)(6) ("SunTrust's Dismissal Motion") [Dkt. # 90] filed November 23, 2016; (3) Request to Take Judicial Notice in Support of Motion to Dismiss Second Amended Complaint as to Defendant SunTrust Bank, N.A. Pursuant to Fed. R. Civ. Proc. 12(b)(6) ("Dismissal RJN") [Dkt.

counsel, the court will deny SunTrust's motion based upon the following findings of fact and conclusions of law made pursuant to F.R.Civ.P. 52(a)(1), as incorporated into FRBP 7052 and applied to adversary proceedings in bankruptcy cases.

## I. STATEMENT OF FACTS

Dufrane attended Thomas· Jefferson School of Law ("TJSL") in San Diego, CA and graduated from Hofstra University's Maurice A. Deane School of Law ("Hofstra Law") in 2009. By the time he received his law degree, Dufrane had incurred debt of nearly $1,000,000. In his Complaint, Dufrane alleges that he "financed his legal education, as well as his undergraduate and other education, primarily through student loans guaranteed by the U.S. Government." [3] On the petition date, Dufrane owed student loan debt through the U.S. Department of Education of approximately $400,000. Dufrane also owed approximately $500,000 on loans made to him by various private lenders between 2006 and 2009 (the "Private Loans"), including the balance due by Dufrane of approximately $90,000 owing on two loans made by Sun-Trust (the "SunTrust Private Loans").

On September 16, 2015, Dufrane filed a voluntary petition under chapter 7 of the Bankruptcy Code. Jerry Namba ("Namba") was appointed as trustee. Namba commenced and concluded a meeting of creditors on October 14, 2015, and filed a Chapter 7 Trustee's Report of No Distribution on November 3, 2015. On December 21, 2015, Dufrane received a discharge. The case was closed on December 29, 2015.

On October 6, 2015, Dufrane filed a complaint seeking a determination that the Private Loans, including the SunTrust Private Loans, fell outside the protection of 11 U.S.C. § 523(a)(8) and were dischargeable. In his Complaint, Dufrane alleges, in pertinent part, that:

2. Shortly after being accepted into Hofstra Law, [Dufrane] began receiving solicitations from the defendants named herein and their predecessors in interest offering private student loans. These solicitations generally stated that the money could be used for anything, and that it would be disbursed directly to the borrower and not through TJSL, Hofstra Law or any other school.

3. [Dufrane] applied for the Private Loans, and each of the loans was made without any inquiry from the lender regarding need, cost of tuition, or cost of any other education-related expense.

4. The proceeds of each of the Private Loans were disbursed directly to [Dufrane] without any input, knowledge or approval of the Financial Aid Office ...

6. None of the Private Loans that are the subject of this [Complaint] are of a type excepted.from discharge pursuant to 11 U.S.C. § 523(a)(8).

7. None of the Private Loans that are the subject of this [Complaint] were made, insured or guaranteed by a governmental unit, nor were any of the Private Loans made under any program funded in whole or in part by a governmental unit or nonprofit institution. All of the Private Loans were made by for-profit entities.

# 91] filed November 23, 2016; (4) Plaintiff's Response in Opposition to Defendant Sun-Trust Bank's Motion to Dismiss With Incorporated Memorandum of Points and Authorities ("Dufrane's Opposition") [Dkt. # 106] filed January 9, 2017; and (5) SunTrust Bank, N.A.'s Brief in Reply to Plaintiff's Opposition

to Motion to Dismiss Second Amended Complaint as to Defendant SunTrust Bank, N.A. Pursuant to Fed. R. Civ. Proc. 12(b)(6) ("Sun-Trust's Reply") [Dkt. # 114] filed February 9, 2017.

3. Complaint, 6:9–11.

8. None of the Private Loans that are the subject of this [Complaint] are an "educational benefit," "scholarship," or "stipend," as those terms are used in 11 U.S.C. § 523(a)(8).

9. None of the Private Loans that are the subject of this [Complaint] are a "qualified educational loan" as that term is used in 11 U.S.C. § 523(a)(8) and defined by the Internal Revenue Code of 1986 (26 U.S.C. § 221(d)(1) and 221(d)(2)). To qualify under those statutes, among other requirements, the loan must be used "solely to pay qualified higher education expenses," which are defined as the "cost of attendance at an eligible educational institution" reduced by the sum of certain amounts excluded from gross income and the amount of any scholarship, allowance, or payment.

10. The cost of attendance at TJSL and Hofstra Law was far less than the amount of the Private Loans that were borrowed while [Dufrane] attended those schools, and the cost of attendance had already been covered by the federal loans (that are not the subject of this [Complaint] ) and other resources.[4]

On November 23, 2016, SunTrust filed its motion to dismiss pursuant to F.R.Civ.P. 12(b)(6) asserting that Dufrane's Complaint fails to state a claim upon which relief can be granted as to SunTrust because each of the SunTrust Private Loans is excepted from discharge as "an obligation to repay funds received as an educational benefit, scholarship or stipend" within the scope of 11 U.S.C. § 523(a)(8)(ii). Dufrane's Opposition was filed on January 9, 2017, to which SunTrust replied on February 9, 2017. After a

hearing on February 16, 2017, the matter was taken under submission.

## II. DISCUSSION

■ This court has jurisdiction over this adversary proceeding pursuant to 28 U.S.C. §§ 157(b) and 1334(b). This matter is a core proceeding under 28 U.S.C. § 157(b)(2)(A), (I) and (O). Venue is appropriate in this court. 28 U.S.C. § 1409(a). "[E]xceptions to discharge 'should be confined to those plainly expressed.'" Kawaauhau v. Geiger, 523 U.S. 57, 62, 118 S.Ct. 974, 140 L.Ed.2d 90 (1998) (citation omitted); see Quarre v. Saylor (In re Saylor), 108 F.3d 219, 221 (9th Cir. 1997) ("[E]xceptions to discharge are to be narrowly construed.").

A. Standard for Dismissal Under Rule 12(b)(6).

Rule 12(b)(6) authorizes the court, upon motion of the defendant, to dismiss a complaint for failure to state a claim upon which relief can be granted.[5] F.R.Civ.P. 12(b)(6). " The purpose of F.R.Civ.P. 12(b)(6) is to enable defendants to challenge the legal sufficiency of complaints without subjecting themselves to discovery." Rutman Wine Co. v. E. & J. Gallo Winery, 829 F.2d 729, 738 (9th Cir. 1987).

Under Rule 8(a) a complaint must contain "a short and plain statement of the claim showing that the pleader is entitled to relief." [6] F.R.Civ.P. 8(a)(2). "[T]he pleading standard Rule 8 announces does not require 'detailed factual allegations,' but it demands more than an unadorned, the-defendant-unlawfully-harmed-me accusation." Ashcroft v. Iqbal, 556 U.S. 662, 678, 129 S.Ct. 1937, 173 L.Ed.2d 868 (2009) (quoting Bell Atlantic Corp. v. Twombly,

---

4. Complaint, 8:26–10:24

5. Rule 12(b)(6) is applicable to adversary proceedings by FRBP 7012(b).

6. Rule 8(a) is applicable to adversary proceedings by FRBP 7008(a).

550 U.S. 544, 555, 127 S.Ct. 1955, 167 L.Ed.2d 929 (2007)). "[A] complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" Iqbal, 556 U.S. at 678, 129 S.Ct. 1937 (quoting Twombly, 550 U.S. at 570, 127 S.Ct. 1955). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." Iqbal, 556 U.S. at 678, 129 S.Ct. 1937 (quoting Twombly, 550 U.S. at 556, 127 S.Ct. 1955). "[A] complaint [that] pleads facts that are 'merely consistent with' a defendant's liability ... 'stops short of the line between possibility and plausibility of entitlement to relief.'" Iqbal, 556 U.S. at 678, 129 S.Ct. 1937 (quoting Twombly, 550 U.S. at 557, 127 S.Ct. 1955). The trial court need not accept as true conclusory allegations in a complaint, or legal characterizations cast in the form of factual allegations. Twombly, 550 U.S. at 555–56, 127 S.Ct. 1955.

A Rule 12(b)(6) dismissal may be based on either the lack of a cognizable legal theory, or the absence of sufficient facts alleged under a cognizable legal theory. Johnson v. Riverside Healthcare Sys., 534 F.3d 1116, 1121 (9th Cir. 2008). A claim cannot be plausible when it has no legal basis.

B. Court's Inquiry is Limited to the Allegations of the Complaint.

■ "In deciding Rule 12(b)(6) motions, courts are not strictly limited to the four corners of complaints." Outdoor Cent., Inc. v. GreatLodge.com, Inc., 643 F.3d 1115, 1120 (8th Cir. 2011). Courts may consider "matters incorporated by reference or integral to the claim, items subject to judicial notice, matters of public record, orders, items appearing in the record of the case, and exhibits attached to the complaint whose authenticity is unquestioned; these items may be considered by the [court] without converting the motion into one for summary judgment." Wright & Miller, Federal Practice and Procedure: Civil 3d § 1357, at 376 (2004). See, e.g., U.S. v. Ritchie, 342 F.3d 903, 908 (9th Cir. 2003) ("A court may ... consider certain materials—documents attached to the complaint, documents incorporated by reference into the complaint, or matters of judicial notice—without converting the motion to dismiss into a motion for summary judgment."); Sears, Roebuck & Co. v. Metropolitan Engravers, Ltd., 245 F.2d 67, 70 (9th Cir. 1956) ("[J]udicial notice may be taken of a fact to show that a complaint does not state a cause of action."); Branch v. Tunnell, 14 F.3d 449, 454 (9th Cir. 1994) ("[W]e hold that documents whose contents are alleged in the complaint and whose authenticity no party questions, but which are not physically attached to the pleading, may be considered in ruling on a Rule 12(b)(6) motion to dismiss."), cert. denied, 512 U.S. 1219, 114 S.Ct. 2704, 129 L.Ed.2d 832 (1994); Barapind v. Reno, 72 F.Supp.2d 1132, 1141 (E.D. Cal. 1999) ("Matters of public record may be considered, including pleadings, orders, and other papers filed with the court or records of administrative bodies."); Roe v. Unocal Corp., 70 F.Supp.2d 1073, 1075 (C.D. Cal. 1999) ("[E]ven if a document is neither submitted with the complaint nor explicitly referred to in the complaint, the ... court may consider the document in ruling on a motion to dismiss so long as the complaint necessarily relies on the document and the document's authenticity is not contested.").

■ SunTrust asks the court to take judicial notice of the Declaration of Crystal Balke filed in support of an earlier Rule 12(b)(6) motion in this adversary proceeding. SunTrust's request is denied. First, Crystal Balke's testimony is not the kind

of facts that may be judicially noticed under Rule 201 because the facts contained in the declaration are subject to reasonable dispute. F.R.Evid. 201(b). Second, the court may not consider Crystal Balke's declaration testimony in deciding a Rule 12(b)(6) without converting the motion into one for summary judgment. Third, Crystal Balke's declaration is not attached to the Complaint nor is its contents referred to in the Complaint. Moreover, the complaint does not explicitly discuss the contents of either of the two exhibits attached to Crystal Balke's declaration, which purport to be copies of promissory notes, nor does the Complaint necessarily rely on either document. The Complaint simply states with respect to SunTrust that Dufrane "borrowed two separate loans from defendant SunTrust[.] [and that] [t]he balance of these loans as of the date of filing this [Complaint] is approximately ninety thousand dollars ($90,000.00)." [7] Finally and most importantly, SunTrust's Dismissal Motion requires the court to decide only a disputed issue of law and as such, Crystal Balke's declaration falls outside the scope of the court's inquiry under Rule 12(b)(6).

C. The SunTrust Private Loans Are Not Excepted From Discharge Under Section 523(a)(8)(A)(ii)

Section 523(a)(8) states that "[a] discharge under section 727 . . . does not discharge an individual debtor from any debt—

> unless excepting such debt from discharge . . . would impose an undue hardship on the debtor and the debtor's dependents, for—
>
> (A) (i) an educational benefit overpayment or loan made, insured, or guaranteed by a governmental unit, or made under any program funded

in whole or in part by a governmental unit or nonprofit institution; or

> (ii) an obligation to repay funds received as an educational benefit, scholarship, or stipend; or

(B) any other educational loan that is a qualified educational loan, as defined in section 221(d)(1) of the Internal Revenue Code of 1986, incurred by a debtor who is an individual.

11 U.S.C. § 523(a)(8). "Congress enacted § 523(a)(8) because there was evidence of an increasing abuse of the bankruptcy process that threatened the viability of educational loan programs and harm to future students as well as taxpayers." Cazenovia College v. Renshaw (In re Renshaw), 222 F.3d 82, 87 (2d Cir. 2000). "By enacting section 523(a)(8), Congress sought principally to protect government entities and nonprofit institutions of higher education—places which lend money or guarantee loans to individuals for educational purposes—from bankruptcy discharge." Santa Fe Med. Servs., Inc. v. Segal (In re Segal), 57 F.3d 342, 348 (3d Cir. 1995). "Because such loans are not based upon a borrower's proven credit-worthiness, and because they serve a purpose which Congress sought to encourage, section 523(a)(8) protects the lender when a borrower, who often would not qualify under traditional underwriting standards, files a chapter 7 bankruptcy." Id.

"Under § 523(a)(8), the lender has the initial burden to establish the existence of the debt and that the debt is an educational loan within the statute's parameters." Roth v. Educational Credit Mgm't Corp. (In re Roth), 490 B.R. 908, 916 (9th Cir. BAP 2013). The burden then shifts to the debtor to satisfy the three-part test set forth in Brunner v. N.Y. State Higher Educ. Servs., Inc. (In re Brunner), 831

---

7. Complaint, 7:22–25.

F.2d 395 (2d Cir. 1987), and show by a preponderance of the evidence that repayment of the debt would impose an undue hardship on the debtor and the debtor's dependents. Id. at 916–17.

SunTrust does not claim that the SunTrust Private Loans are excepted from discharge under § 523(a)(8)(A)(i) or § 523(a)(8)(B). Nor does SunTrust claim that any of the SunTrust Private Loans should be excepted from discharge under § 523(a)(8)(A)(ii) as an obligation to repay a scholarship or stipend. Dufrane does not allege undue hardship in his Complaint. Hence, the sole issue before the court is whether § 523(a)(8)(A)(ii) excepts from discharge each of the SunTrust Private Loans to Dufrane as "an obligation to repay funds received as an educational benefit."

SunTrust asserts that "[s]ection 523(a)(8) was amended in 2005 to make a wider range of student loan debt nondischargeable regardless of the nature of the lender."[8] SunTrust further asserts that "[s]ection 523(a)(8)(A)(ii) creates a standalone exception to discharge, separate and apart from the exception to discharge for government and non-profit related student debt created by 11 U.S.C. § 523(a)(8)(A)(i)[,]" and that "[s]ection 523(a)(8)(A)(ii) applies to all obligations meeting the criteria of the subsection regardless of whether the lender is governmental, nonprofit or for profit in nature."[9] SunTrust argues that "[t]he purpose of the loan, not its use, controls whether the loan confers an educational benefit."[10] SunTrust reasons that it disbursed funds to

Dufrane, Dufrane received the funds while in school, and therefore, the funds disbursed by SunTrust under the SunTrust Private Loans "conferred an educational benefit on [Dufrane] irrespective of how the funds may have been used."[11]

■ Dufrane concedes that the documents evidencing the SunTrust Private Loans "provide that the purpose of the SunTrust loans was for education expenses."[12] Dufrane's Complaint, however, alleges that the SunTrust Private Loan proceeds were not used for educational purposes.[13] Dufrane admits "that he received the funds in the form of loan proceeds" from the SunTrust Private Loans, but counters that the term "educational benefit," as used in § 523(a)(8)(A)(ii), does not include the SunTrust Private Loan proceeds as a matter of law.[14]

### 1. Educational Benefit

"Educational benefit" is not a term defined in the Code. Notwithstanding SunTrust's claim that the language of § 523(a)(8)(A)(ii) is plain and unambiguous,[15] bankruptcy courts are divided on the issues of whether the term "educational benefit," as used in § 523(a)(8)(A)(ii), includes a loan and whether § 523(a)(8)(A)(ii)'s exception to discharge for an obligation to repay an educational benefit should be construed broadly or narrowly.

Some courts believe the term "educational benefit" should be interpreted broadly to except from discharge a wide variety of loans and accommodations so

---

8. SunTrust's Dismissal Motion, 4:2–3.

9. Id. at 4:9–12.

10. Id. at 2:11–12.

11. Id. at 5:2.

12. Dufrane's Opposition, 8:7–8.

13. Complaint, 10:19–24; Dufrane's Opposition, 10:9–11.

14. Dufrane's Opposition, 8:12–13.

15. SunTrust's Reply, 15–17.

long as they were incurred for some educational purpose. See, e.g., Rizor v. Acapita Educ. Fin. Corp. (In re Rizor), 553 B.R. 144, 150 (Bankr. D. Alaska 2016) ("Money paid to the education institution for a debtor's educational benefit which the debtor is required to repay to the lender also qualifies[.]" for exception to discharge under § 523(a)(8)(A)(ii)) (emphasis in original); Brown v. Citibank, N.A. (In re Brown), 539 B.R. 853, 859 (Bankr. S.D. Cal. 2015) ("The court ... concludes that § 523(a)(8)(A)(ii) should be interpreted broadly to include a bar examination loan under the definition of 'educational benefit.'"); Benson v. Corbin (In re Corbin), 506 B.R. 287, 298 (Bankr. W.D. Wash. 2014) ("[T]he provision of an accommodation, in order to secure for a student funds for the purpose of paying educational expenses, gives rise to an obligation on the part of the debtor to repay funds received as an educational benefit once the co-signer is required to honor its obligation to pay the debt."); Beesley v. Royal Bank of Can. (In re Beesley), 2013 WL 5134404, *5 (Bankr. W.D. Pa. 2013) ("Debtor entered into the Royal Credit Line Agreement for Students (by its title, a loan for students), and consistent therewith, the proceeds were used for tuition, room and board, and books by the Debtor. Accordingly, this Court finds that the funds provided the Debtor with an educational benefit."); Roy v. Sallie Mae (In re Roy), 2010 WL 1523996, *1 (Bankr. D.N.J. 2010) ("The term 'educational benefit' is not defined in the Bankruptcy Code, but Congress through successive amendments to § 523(a)(8) has expended [sic] the scope of the section."); Carow v. Chase Student Loan Serv. (In re Carow), 2011 WL 802847, *4 (Bankr. D.N.D. 2011) ("Given the breadth afforded to the phrase 'educational benefit,' these facts clearly establish that the Chase loans were used to provide Debtor an educational benefit."); and Sensient Tech. Corp. v. Baiocchi (In re Baiocchi), 389 B.R. 828, 831–32 (Bankr. E.D. Wis. 2008) ("BAPCPA's separation of the phrase 'obligation to repay funds received as an educational benefit' from the phrases 'loans made, insured or guaranteed by a governmental unit' and 'program funded in whole or in part by a nonprofit institution' in § 523(a)(8)(A)(i), must be read as encompassing a broader range of educational benefit obligations .... ").

Other courts disagree, adopting a narrower construction of the term "educational benefit" to exclude loans from the ambit of § 523(a)(8)(A)(ii). See, e.g., London–Marable v. Sterling, 2008 WL 2705374, *6 (D. Ariz. 2008) ("Reading the third clause of section 523(a)(8) to except from discharge all loans or contracts for educational benefits would render the preceding clauses superfluous.") (emphasis in original); Campbell v. Citibank, N.A. (In re Campbell), 547 B.R. 49, 60 (Bankr. E.D.N.Y. 2016) ("[T]he Bar Loan, a product of an arm's-length agreement on commercial terms, is not an 'educational benefit' under 523(a)(8)(A)(ii)."); Nunez v. Key Educ. Res. (In re Nunez), 527 B.R. 410, 415 (Bankr. D. Or. 2015) ("I see no basis to untether the language in § 523(a)(8)(A)(ii) to apply the student loan exception to discharge to 'all obligations to repay funds received as an educational benefit, scholarship or stipend,' without limitation."), and In re Meyer, 2016 WL 3251622, *2 (Bankr. N.D. Ohio 2016) ("[A]n expansive reading of section 523(a)(8)(A)(ii) would subsume and make unnecessary the separate subdivisions of section 523(a)(8)(A)(i) and (B).").

### 2. Amendment of § 523(a)(8) in 1990

Section 523(a)(8)'s exception "for an obligation to repay funds received as an educational benefit, scholarship or stipend" was added by the Crime Control Act of

1990.[16] Congress amended § 523(a)(8) largely in response to U.S. Health & Human Servs. v. Smith, 807 F.2d 122 (8th Cir. 1986). In that case, the bankruptcy court held that the debtor's financial obligations under the federally-sponsored Physician Shortage Area Scholarship Program ("PSASP"), 42 U.S.C. § 295g–21 (Supp. V 1975) constituted a "contingent scholarship," not a debt for an educational loan within the meaning of § 523(a)(8), and was dischargeable. Id. at 123. The district court affirmed. Id. The Eighth Circuit reversed, stating that "we are satisfied that the legislative history shows beyond doubt that Congress intended § 523(a)(8) of the Bankruptcy Code to make nondischargeable those debts incurred under programs such as PSASP." Id. at 127.

Section 523(a)(8)'s exception "for an obligation to repay funds received as an educational benefit, scholarship or stipend" was intended to except from discharge "obligations to repay educational funds received in the form of benefits (such as VA benefits), scholarships (such as medical service corps scholarships) and stipends" which were "often very sizeable and [determined to be worthy of] the same treatment as a 'student loan' with regard to restrictions on dischargeability in bankruptcy." Campbell v. Citibank, N.A. (In re Campbell), 547 B.R. 49, 56 (Bankr. E.D.N.Y. 2016) (quoting Federal Debt Collection Procedures of 1990: Hearing on P.L. 101–647 Before the H. Subcomm. on Econ. and Commercial Law, H. Judiciary Committee 101st Cong. 74–75 (June 14, 1990)). Prior to its amendment by the Bankruptcy Amendments and Consumer Protection Act in 2005, § 523(a)(8) excepted from discharge an individual debtor's debt for:

"an educational benefit overpayment or loan made, insured or guaranteed by a governmental unit, or made under any program funded in whole or in part by a governmental unit, or nonprofit institution, or for an obligation to repay funds received as an educational benefit, scholarship or stipend, unless excepting such debt from discharge under this paragraph will impose an undue hardship on the debtor and the debtor's dependents. . . ."

See The President & Bd. of Ohio Univ. v. Hawkins (In re Hawkins), 317 B.R. 104, 108 (9th Cir. BAP 2004) (quoting 11 U.S.C. § 523(a)(8) (emphasis added)), aff'd, 469 F.3d 1316 (9th Cir. 2006). Section 523(a)(8), as written prior to 2005, was interpreted to except from discharge two categories of debts: "1) debts for educational benefit overpayments or loans made, insured, or guaranteed by a governmental unit or nonprofit institution; or 2) debts for obligations to repay funds received as an educational benefit, scholarship[,] or stipend." Inst. of Imaginal Studies, d/b/a Meridian Univ. v. Christoff (In re Christoff), 527 B.R. 624, 629–30 (9th Cir. BAP 2015) (quoting Hawkins, 317 B.R. at 109).

In a series of cases following the 1990 amendment, bankruptcy courts uniformly rejected the notion that the new term "educational benefit" could be read broadly and independent of other portions of § 523(a)(8) to except from discharge loans made by for-profit lenders to fund truck driving training courses. See, e.g., Scott v. Midwestern Training Ctr., Inc. (In re Scott), 287 B.R. 470, 474 (Bankr. E.D. Mo. 2002) ("If the third provision of section 523(a)(8) were interpreted to mean that all educational loans were excepted from discharge then the first two categories (extending an exception only to governmental entities and nonprofit institutions) would certainly be rendered meaningless and su-

16. Pub. L. No. 101–647, § 3621, 104 Stat. 4789 (1990).

perfluous."); Jones v. H & W Recruiting Enters., LLC (In re Jones), 242 B.R. 441, 444 (Bankr. W.D. Tenn. 1999) ("[D]efendant is a strictly 'for-profit' lender for purposes of the student loan discharge exception under sections 1328(a)(2) and 523(a)(8) of the Code and ... does not qualify as a creditor whose student loan debt may be excepted from discharge."); United Res. Sys., Inc. v. Meinhart (In re Meinhart), 211 B.R. 750, 751 (Bankr. D. Colo. 1997) ("[A] strictly for profit educational lender does not qualify as a creditor which may exempt from discharge its claim against a student pursuant to 11 U.S.C. § 523(a)(8)."); and McClure v. Action Career Training (In re McClure), 210 B.R. 985, 987 (Bankr. N.D. Tex. 1997) ("In examining the legislative history of this amendment to § 523(a)(8), the court was unable to find any hint that Congress intended to expand the scope of the statute to include educational benefits provided by for-profit businesses."). These debts had been considered dischargeable in chapter 7 prior to 1990, and the 1990 amendment did not make them nondischargeable under § 523(a)(8). In support of its decision that the commercial lender's loan was discharged, the Meinhart court reasoned that:

> Were this Court to accept the Plaintiff's position that the final phrase should be read independently of the former portions of the subsection, the final phrase would subsume the remainder. The former, longer lived portions of Section 523(a)(8) would, therefore, be rendered meaningless. Such a conclusion is contrary to another clear mandate of statutory construction: A statute should not be construed in a way that renders phases meaningless, redundant, or superfluous.

Id. at 753.

3. Amendment of § 523(a)(8) in 2005

Congress restructured § 523(a)(8) in 2005. Congress did not change the language of § 523(a)(8)'s discharge exception for "an obligation to repay funds received as an educational benefit, scholarship or stipend." It did, however, separately classify "an obligation to repay funds received as an educational benefit, scholarship or stipend" as a nondischargeable debt in § 523(a)(8)(A)(ii), thereby creating " 'a separate category delinked from the phrases 'educational benefit or loan' in § 523(a)(8)(A)(i) and 'any other educational loan' in § 523(a)(8)(B)." Inst. of Imaginal Studies v. Christoff (In re Christoff), 527 B.R. 624, 634 (9th Cir. BAP 2015) (quoting Inst. of Imaginal Studies v. Christoff (In re Christoff), 510 B.R. 876, 882 (Bankr. N.D. Cal. 2014). By its terms, § 523(a)(8)(A)(ii) "now standing alone, excepts from discharge only those debts that arise from 'an obligation to repay funds received as an educational benefit,' and must therefore be read as a separate exception to discharge as compared to that provided in § 523(a)(8)(A)(i) for a debt for an 'educational overpayment or loan' made by a governmental unit or nonprofit institution or, in § 523(a)(8)(B), for a 'qualified education loan.'" Christoff, 527 B.R. at 634. In the court's view, the fact that Congress chose to separately classify from loans the discharge exception for "an obligation to repay funds received as an educational benefit, scholarship or stipend" bolsters the conclusion that commercial loans by for-profit lenders, such as the SunTrust Private Loans, fall outside the scope of § 523(a)(8(A)(ii). See Id. ("[W]e must presume that, in organizing the provisions of § 523(a)(8) as it did in BAPCPA, Congress intended each subsection to have a distinct function and to target different kinds of debts.").

▮ "In construing statutes, we presume Congress legislated with awareness of relevant judicial decisions." U.S. v. Male

Juvenile, 280 F.3d 1008, 1016 (9th Cir. 2002). Courts must also "presume that when Congress amends a statute, it is knowledgeable about judicial decisions interpreting prior legislation." Porter v. Bd. of Trs. of Manhattan Beach Unified Sch. Dist., 307 F.3d 1064, 1072 (9th Cir. 2002). "[W]hen 'judicial interpretations have settled the meaning of an existing statutory provision, repetition of the same language in a new statute indicates, as a general matter, the intent to incorporate its . . . judicial interpretations as well.' " Merrill Lynch, Pierce, Fenner & Smith, Inc. v. Dabit, 547 U.S. 71, 85, 126 S.Ct. 1503, 164 L.Ed.2d 179 (2006) (quoting Bragdon v. Abbott, 524 U.S. 624, 645, 118 S.Ct. 2196, 141 L.Ed.2d 540 (1998).

■ Section 523(a)(8)(A)(ii) "is not a 'catch-all' provision designed to include every type of credit transaction that bestows an educational benefit on a debtor." Christoff, 527 B.R. at 635 n.9. When it amended § 523(a)(8) in 2005, Congress must have been aware of judicial interpretations of § 523(a)(8)'s exception "for an obligation to repay funds received as an educational benefit, scholarship or stipend" since the 1990 amendment yet it chose not to change the language of the statute in 2005. Hence, Congress is presumed to have intended the same construction to apply to the new statute as applied to the existing statute. See Cannon v. Univ. of Chicago, 441 U.S. 677, 696, 99 S.Ct. 1946, 60 L.Ed.2d 560 (1979) ("[I]t is not only appropriate but also realistic to presume that Congress was thoroughly familiar with these unusually important precedents from this and other federal courts and that it expected its enactment to be interpreted in conformity with them.").

■ In Campbell v. Citibank, N.A. (In re Campbell), 547 B.R. 49 (Bankr. E.D.N.Y. 2016), the bankruptcy court considered this issue, analyzed the language of § 523(a)(8)(A)(ii), and discussed the legislative history of the amendments to § 523(a)(8) since 1990, stating:

> The canon of statutory construction known as *noscitur a sociis* instructs that when a statute contains a list, each word in that list presumptively has a "similar" meaning. To the extent that "educational benefit" (defined nowhere in the Bankruptcy Code) is ambiguous, it should be presumed to have a meaning similar to the other items in the list set forth in § 523(a)(8)(A)(ii). "Scholarship" and "stipend" both refer to funds which are not generally required to be repaid by the recipient. Therefore, in the absence of plain meaning to the contrary, or compelling legislative history, **"educational benefit" must be understood to refer to something other than a loan**, especially given that Congress uses the word "loan" elsewhere in § 523(a)(8). The concept which unites the three separate terms in the list in § 523(a)(8)(A)(ii) is that they all refer to types of conditional grants.

Id. at 55 (emphasis added; citations omitted). The Campbell court further stated that:

> Some courts have decided without explanation, or assumed, that "educational benefit," as used in § 523(a)(8)(A)(ii), encompasses any loan which relates in some way to education. This broad interpretation of the exception to discharge in § 523(a)(8)(A)(ii) would render superfluous most of the other provisions of § 523(a)(8). If the term "educational benefit" includes any student loan, there would be no need to specifically identify, as Congress did in § 523(a)(8)(A)(i) and § 523(a)(8)(B), particular loans, extended by particular lenders, which are excepted from discharge, since § 523(a)(8)(A)(ii), if interpreted to extend to all education-related loans,

**40**

would swallow both provisions. The cases which have failed to address this issue, including those relied upon by Defendants, are for this reason unpersuasive.

Id. at 54–55 (citations omitted).

The court finds the reasoning in Campbell persuasive and consistent with the canons of statutory construction, the Code's policy to strictly construe exceptions to discharge under § 523, and judicial interpretations of the phrase "obligation to repay funds received as an educational benefit" since 1990. Section 523(a)(8)(A)(ii) excepts from discharge educational debts, other than loans, such as conditional grants and stipends that generally are not required to be repaid. Moreover, an expansive reading of § 523(a)(8)(A)(ii) would subsume and make unnecessary § 523(a)(8)(A)(i) and § 523(a)(8)(B).

■■■ With respect to SunTrust's argument that "[t]he purpose of the loan, not its use, controls whether the loan confers an educational benefit," [17] the court agrees with Dufrane that "[t]he 'Purpose Test' restricts a federally-subsidized or qualified educational loan from degenerating into a non-qualified loan" [and] "it cannot be used to elevate a non-qualified educational loan into a qualified educational loan." [18] See Murphy v. Pa. Higher Educ. Assistance Agency (In re Murphy), 282 F.3d 868, 870 (5th Cir. 2002) ("Treating FFELP guaranteed loans uniformly, regardless of actual use, is true to the text and will prevent recent graduates from reneging on manageable debts and will preserve the solvency of the student loan system."). The fact that SunTrust provided in each of the promissory notes evidencing the SunTrust Private Loans that the loan proceeds would be used to pay educational and living expenses, as alleged by SunTrust, does not make the SunTrust Private Loans the type of "obligation to repay funds received as an educational benefit" that Congress sought to make nondischargeable under § 523(a)(8)(A)(ii).

### III. CONCLUSION

Because Dufrane's Complaint states a plausible claim for relief, the court will deny SunTrust's Dismissal Motion under Rule 12(b)(6). A separate order will be entered consistent with this memorandum decision.

---

17. SunTrust's Dismissal Motion, 2:11–12.

18. Dufrane's Response, 31:10–12 (emphasis in original).