IN RE: Joel A. NUNEZ, Debtor.

Joel A. Nunez, Plaintiff,

v.

Key Education Resources/GLESI, Defendant.

Bankruptcy Case No. 14–32528–rld7
Adv. Proc. No. 14–03177–rld

United States Bankruptcy Court,
D. Oregon.

Filed 03/13/2015

---

Andrew B. Harris, Bend, OR, for Plaintiff.

Katie A. Axtell, David A. Weibel, Seattle, WA, for Defendant.

## MEMORANDUM OPINION

RANDALL L. DUNN, U.S. Bankruptcy Judge

I heard the plaintiff's Motion for Summary Judgment ("SJ Motion") in this adversary proceeding ("Adversary Proceeding") on February 10, 2015 (the "Hearing") and took the matter under advisement. In his Complaint, the plaintiff Joel A. Nunez ("Mr. Nunez") sought judgment declaring his debt to defendant Key Education Resources/GLESI ("Key Education") dischargeable under 11 U.S.C. § 523(a)(8).[1] Key Education opposed the SJ Motion.

■ I have reviewed the Adversary Proceeding pleadings, including the Complaint and the Answer, and the parties' legal memoranda filed in support of and in opposition to the SJ Motion. I reviewed their evidentiary submissions and applicable authorities, both as cited to me and as located through my own research. At the request of counsel for Mr. Nunez, and hearing no objection from Key Education, I have taken judicial notice of the United States Department of Education's Federal School Codes Lists for the years 2004–05 and 2005–06 (the "School Codes Lists"). Federal Rule of Evidence 201. I further have taken judicial notice of the docket and documents filed in Mr. Nunez's main chapter 7 case, Case No. 14–32528–rld7 ("Nunez Main Case"), for purposes of confirming and ascertaining facts not reasonably in dispute. *Id.*; *In re Butts,* 350 B.R. 12, 14 n. 1 (Bankr.E.D.Pa.2006).

This Memorandum Opinion sets forth my conclusions of law in light of the record before me pursuant to Civil Rule 52(a), applicable in this Adversary Proceeding pursuant to Rule 7052.

### Factual Background

The following background facts are taken from Mr. Nunez's Concise Statement of Material Facts ("Concise Statement"), insofar as those facts are agreed to in Key Education's Response to the Concise Statement, and the Declaration of Otis Jefferson in support of Key Education's opposition to the SJ Motion.

In 2004, Mr. Nunez enrolled in Wings of the Cascades, a flight school operated by Spirit Flight, Inc., which does not appear on the School Codes Lists. To finance his attendance, Mr. Nunez applied for and received two loans ("Loans") in 2004 and 2005 from Key Education, documented by promissory notes ("Notes"). Each of the Notes identifies the lender as Key Bank USA, National Association ("Key Bank"), a for-profit banking institution. For financial and other reasons, Mr. Nunez eventually withdrew from Wings of the Cascades. Spirit Flight, Inc. closed and filed for relief under chapter 7 on December 30, 2010.

On April 30, 2014, Mr. Nunez filed the Nunez Main Case, listing in his Schedule F a debt to Key Education in the amount of $120,105.00. On July 25, 2014, Mr. Nunez filed his Complaint in this Adversary Proceeding.

### Jurisdiction

I have jurisdiction to decide the SJ Motion under 28 U.S.C. §§ 1334, 157(b)(1) and 157(b)(2)(I).

### Discussion

#### A. Summary Judgment Standards

Under Civil Rule 56(a), applicable to this Adversary Proceeding under Rule 7056,

---

**1.** Unless otherwise specified, all chapter and section references are to the Bankruptcy Code, 11 U.S.C. §§ 101–1532, and all "Rule" references are to the Federal Rules of Bankruptcy Procedure, Rules 1001–9037. The Federal Rules of Civil Procedure are referred to as "Civil Rules."

summary judgment is appropriately entered only when "the pleadings, the discovery and disclosure materials on file, and any affidavits show that there is no genuine issue as to any material fact and that the movant is entitled to judgment as a matter of law." Summary judgment is inappropriate when there are disputes over facts that may affect the outcome of the litigation under governing law. *Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 249, 106 S.Ct. 2505, 91 L.Ed.2d 202 (1986). An issue of fact is genuine and material if the evidence is such that the fact finder could decide the case in favor of the nonmoving party. *Id.* at 255, 106 S.Ct. 2505.

The moving party initially bears the burden of showing that there are no genuine issues of material fact. *Bhan v. NME Hospitals, Inc.,* 929 F.2d 1404, 1409 (9th Cir.1991). If the moving party meets this burden, the opposing party must produce sufficient evidence beyond the pleadings, through affidavits and/or other admissible evidence, to demonstrate that material fact disputes in fact exist. *Id.*

B. *Section 523(a)(8)(A)-Current and Historical*

■ In analyzing the exceptions to discharge under the Bankruptcy Code, including § 523(a)(8), I start from the long-established principle that exceptions to discharge "should be confined to those plainly expressed." *Kawaauhau v. Geiger,* 523 U.S. 57, 62, 118 S.Ct. 974, 140 L.Ed.2d 90 (1998), quoting from *Gleason v. Thaw,* 236 U.S. 558, 562, 35 S.Ct. 287, 59 L.Ed. 717 (1915). *See Mele v. Mele (In re Mele),* 771 F.3d 1119, 1125 (9th Cir.2014); *Snoke v. Riso (In re Riso),* 978 F.2d 1151, 1154 (9th Cir.1992) ("[E]xceptions to discharge should be strictly construed against an objecting creditor and in favor of the debtor.").

Section 523(a)(8) currently excepts from an individual chapter 7 debtor's discharge, debts for

(A)(i) an educational benefit overpayment or loan made, insured, or guaranteed by a governmental unit, or made under any program funded in whole or in part by a governmental unit or nonprofit institution; or

(ii) an obligation to repay funds received as an educational benefit, scholarship, or stipend; or (B) any other educational loan that is a qualified education loan, as defined in section 221(d)(1) of the Internal Revenue Code of 1986, incurred by a debtor who is an individual;

unless excepting such debt from the debtor's discharge would impose an undue hardship on the debtor and the debtor's dependents. The current version of § 523(a)(8) was adopted as part of the Bankruptcy Abuse Prevention and Consumer Protection Act of 2005, Pub.L. 109–8, April 20, 2005, 119 Stat. 23 ("BAPCPA").

■ The legislative history with respect to BAPCPA's amendments to § 523(a)(8) is sparse: The Report of the House Judiciary Committee states **only:**

Sec. 220. *Nondischargeability of Certain Educational Benefits and Loans.* Section 220 of [BAPCPA] amends section 523(a)(8) of the Bankruptcy Code to provide that a debt for a qualified education loan (**as defined in section 221(e) [sic] (1) of the Internal Revenue Code**) is nondischargeable, unless excepting such debt from discharge would impose an undue hardship on the debtor and the debtor's dependents.

H.R.Rep. No. 109–31, Pt. 1, 109th Cong., 1st Sess. (2005) (emphasis added). I agree with courts that have held that § 523(a)(8) "was amended in 2005 by Congress to make a broader range of student loan debt

nondischargeable, regardless of the nature of the lender." *See, e.g., Benson v. Corbin (In re Corbin),* 506 B.R. 287, 296 (Bankr. W.D.Wash.2014). However, the breadth of the expansion of § 523(a)(8)'s exception to discharge in BAPCPA extends no further than the language actually approved by Congress in the BAPCPA amendments.

Prior to BAPCPA, the 1998 version of § 523(a)(8) provided an exception to discharge for

an educational benefit overpayment or loan made, insured or guaranteed by a governmental unit, or made under any program funded in whole or in part by a governmental unit or nonprofit institution, or for an obligation to repay funds received as an educational benefit, scholarship or stipend, unless excepting such debt from discharge under this paragraph will impose an undue hardship on the debtor and the debtor's dependents[.]

The preamble to the 1994 version of § 523(a)(8) provided an exception to discharge for

an educational benefit overpayment or loan made, insured or guaranteed by a governmental unit, or made under any program funded in whole or in part by a governmental unit or nonprofit institution, or for an obligation to repay funds received as an educational benefit, scholarship or stipend, unless....

Accordingly, consistent with the above-quoted legislative history, the only substantive change to the language of § 523(a)(8) in BAPCPA was the addition of subsection 523(a)(8)(B). The only change to what is now designated as § 523(a)(8)(A)(i) and (ii) is its punctuation.

Judge Perris carefully analyzed the language of current § 523(a)(8)(A)(i) and (ii) in her published opinion in *Plumbers Joint Apprenticeship and Journeyman Training Committee v. Rosen (In re Rosen),*

179 B.R. 935 (Bankr.D.Or.1995). In *Rosen,* the debtor sought to discharge his debt for costs of a union trust fund plumbing apprenticeship training program that had become payable after the debtor was terminated from the union apprenticeship training and had obtained employment as an apprentice plumber with a nonunion employer. *Id.* at 936–37. The case raised issues as to the nature of the subject debt and application of the undue hardship standards for student loan discharge. For present purposes, I focus on the *Rosen* analysis as to whether the subject debt was within the scope of § 523(a)(8)'s exception to discharge.

Judge Perris began her analysis by rejecting the debtor's contentions that the term "educational" should be interpreted narrowly to apply only to obligations pertaining to education received at "institutions of higher or post-secondary education" and was not appropriately applied to encompass the apprenticeship training program at issue.

There is no dispute that the [apprenticeship training] program, through on the job training and classroom instruction, offered apprentices the opportunity to expand their knowledge of matters pertaining to the plumbing profession, enhance their professional capabilities, obtain the qualifications and experience necessary for a professional license and obtain college credits.

*Id.* at 939. Judge Perris went on to determine that the debtor's obligation was a "loan" for purposes of § 523(a)(8). In addition, she determined that if no governmental unit was involved, "§ 523(a)(8) requires that the educational loan be made under a program funded in whole or in part by a nonprofit institution." *Id.* at 940. Based on the facts before her, Judge Perris concluded that the union trust fund, a tax-exempt organization under 26 U.S.C.

§ 501(c)(3) whose assets were held and applied solely in order to provide apprenticeship training instruction and to pay administrative expenses of the program, qualified as a nonprofit institution. *Id.* Accordingly, the § 523(a)(8) exception to discharge applied to the subject debt, and the discussion then turned to whether the debtor had met his burden to establish that repayment would impose an undue hardship on him and his dependents. *See id.* at 938–40.

The lesson from *Rosen* is that pre-BAPCPA, the language now included in § 523(a)(8)(A)(i) and (ii) was treated as an integrated whole: Not only was it required that the subject obligation be incurred for an educational benefit, scholarship, stipend or loan, but the obligation also had to be incurred to a governmental unit or nonprofit institution. And post-BAPCPA, nothing about that language changed: All that changed was the punctuation. *See, e.g., United States v. Alvarez–Hernandez,* 478 F.3d 1060, 1065 (9th Cir.2007):

> Under the rules of statutory construction, we presume that Congress acts "with awareness of relevant judicial decisions." *United States v. Male Juvenile,* 280 F.3d 1008, 1016 (9th Cir.2002); *accord United States v. Hunter,* 101 F.3d 82, 85 (9th Cir.1996) ("[A]s a matter of statutory construction, we 'presume that Congress is knowledgeable about existing law pertinent to the legislation it enacts.' ") (quoting *Goodyear Atomic Corp. v. Miller,* 486 U.S. 174, 184–85 (1988)). We also "presume that when Congress amends a statute, it is knowledgeable about judicial decisions interpreting the prior legislation." *Porter v. Bd. of Trs. of Manhattan Beach Unified Sch. Dist.,* 307 F.3d 1064, 1072 (9th Cir.2002)[.]

Consistent with what the Supreme Court stated in *Geiger* and frequently before, no change to the language included in § 523(a)(8)(A), and consequently its interpretation, has been "plainly expressed." I further note that the punctuation change was not referenced in the above-quoted legislative history.

■ I see no basis to untether the language in § 523(a)(8)(A)(ii) to apply the student loan exception to discharge to "all obligations to repay funds received as an educational benefit, scholarship or stipend," without limitation. Such an interpretation would render § 523(a)(8)(B), the provision that Congress added to § 523(a)(8) in BAPCPA, superfluous and makes no sense. After all, if any educational loans of any kind are excepted from discharge by § 523(a)(8)(A)(ii), what addition does excepting qualified educational loans under the Internal Revenue Code make to the discharge exception? The educational loans excepted from discharge under § 523(a)(8)(B) would be no more than a subset of such loans already excepted from discharge under § 523(a)(8)(A)(ii). Accordingly, I reject the conclusion of some courts that the addition of letter subsection identifiers and a semicolon to familiar language in § 523(a)(8) "must be read as encompassing a broader range of educational benefit obligations." *See, e.g., Sensient Technologies Corp. v. Baiocchi (In re Baiocchi),* 389 B.R. 828, 831–32 (Bankr.E.D.Wis.2008).

■ It is uncontested by Mr. Nunez that the proceeds of the Loans would be used solely for educational purposes, but it likewise is uncontested, based on the evidence submitted by Key Education, that the lender, Key Bank, is neither a governmental unit nor a nonprofit institution. In these circumstances, based on the foregoing analysis, I conclude that Mr. Nunez's debt to Key Education is not excepted from his discharge under § 523(a)(8)(A).

### C. Section 523(a)(8)(B)-Qualified Education Loans

■ As noted above, § 523(a)(8)(B) excepts from an individual debtor's discharge "any other education loan that is a qualified education loan, as defined in section 221(d)(1) of the Internal Revenue Code of 1986." 26 U.S.C. § 221(d) provides in relevant part:

> (1) **Qualified education loan.**—The term "qualified education loan" means any indebtedness incurred by the taxpayer solely to pay qualified higher education expenses . . . .

> (2) **Qualified higher education expenses.**—The term "qualified higher education expenses" means the cost of attendance . . . at an eligible educational institution. . . . For purposes of the preceding sentence, the term "eligible educational institution" has the same meaning given such term by [26 U.S.C.] section 25A(f)(2). . . .

In turn, 26 U.S.C. § 25A(f)(2) provides as follows:

> (2) **Eligible educational institution.**— The term "eligible educational institution" means an institution—

> (A) which is described in section 481 of the Higher Education Act of 1965 (20 U.S.C. 1088), as in effect on the date of enactment of this section, *and*

> (B) which is eligible to participate in a program under title IV of such Act. (Emphasis added.)

As noted above, at Mr. Nunez's request, without objection from Key Education, I have taken judicial notice of the School Codes Lists for 2004 through 2006, which encompass the period during which the Loans were made. The School Codes Lists identify "[a]ll postsecondary schools that are currently eligible for Title IV aid." Neither "Spirit Flight, Inc." nor "Wings of the Cascades" appears as an eligible edu-

cational institution on either of the School Codes Lists.

In these circumstances, I agree with Mr. Nunez that the flight school he attended was not an "eligible educational institution." Consequently, the Loans he obtained to attend flight school were not "qualified education loans," as defined in 26 U.S.C. § 221(d)(1) and (2), and I conclude that the Loans are not excepted from Mr. Nunez's discharge under § 523(a)(8)(B).

### Conclusion

In light of the foregoing analysis, my ultimate conclusion is that Mr. Nunez is entitled to summary judgment in his favor on his claim that his debt to Key Education is not excepted from his chapter 7 discharge under § 523(a)(8). Mr. Harris should submit an order and judgment consistent with the decision in this Memorandum Opinion within ten days after its entry.