**ORDERED PUBLISHED**



# UNITED STATES BANKRUPTCY APPELLATE PANEL
# OF THE NINTH CIRCUIT

| | |
|---|---|
| In re:<br>REANNA LEIGH IRIGOYEN,<br>　　　　　Debtor. | BAP No. AZ-23-1181-LBC<br><br>Bk. No. 2:20-bk-04594-MCW |
| REANNA LEIGH IRIGOYEN,<br>　　　　　Appellant,<br>v.<br>1600 WEST INVESTMENTS, LLC;<br>WHITE KNIGHT FUNDING, LLC,<br>　　　　　Appellees. | Adv. No. 2:21-ap-00037-MCW<br><br>**OPINION** |

Appeal from the United States Bankruptcy Court
for the District of Arizona
Madeleine C. Wanslee, Bankruptcy Judge, Presiding

APPEARANCES

German Yusufov of Yusufov Law Firm PLLC argued for appellant; John D. Parker, II of Parker Law Firm, P.L.C. argued for appellees.

Before: LAFFERTY, BRAND, and CORBIT, Bankruptcy Judges.

LAFFERTY, Bankruptcy Judge:

1

**INTRODUCTION**

Section 523(a)(8)[1] of the Bankruptcy Code excepts from discharge certain qualifying loans used to fund a debtor's education. It is well established that, if a debtor wants to receive a discharge of a qualified educational loan, the debtor bears the burden of filing a lawsuit and obtaining a judgment of dischargeability. Otherwise, debts that come within the purview of § 523(a)(8) are automatically nondischargeable, and the lender is not required to obtain a nondischargeability judgment before collecting on the debt post-discharge.

This case presents a more pointed question: what should the consequence be if a court determines after discharge that a debt is **not** qualified as the type of educational loan excepted from discharge? Should the debt be presumed nondischargeable until the debtor proves otherwise? And should efforts to collect that presumptively nondischargeable debt be exempt from the consequences of violating the discharge injunction?

After Reanna Leigh Irigoyen ("Debtor") received her chapter 7 discharge, appellees 1600 West Investments, LLC ("1600 West") and White Knight Funding, LLC ("White Knight" and, together with 1600 West, "Creditors") continued to attempt collection of the debt owed to them. Debtor and Creditors disputed whether the subject debt was discharged

---

[1] Unless specified otherwise, all chapter and section references are to the Bankruptcy Code, 11 U.S.C. §§ 101–1532, "Rule" references are to the Federal Rules of Bankruptcy Procedure, and "Civil Rule" references are to the Federal Rules of Civil Procedure.

under § 523(a)(8). After trial on the issue, the bankruptcy court held that the debt was dischargeable. That conclusion is not on appeal.

The bankruptcy court further held that the debt to Creditors was not discharged until Debtor obtained a judgment of dischargeability and, as a result, did not assess whether Creditors should be subject to contempt sanctions for violation of the discharge injunction. The bankruptcy court relied on *Tennessee Student Assistance Corp. v. Hood*, 541 U.S. 440, 450 (2004), for the proposition that § 523(a)(8) is "self-executing" and that therefore the debt is not discharged until the court determines otherwise. We believe the bankruptcy court erroneously interpreted the Supreme Court's decision and the "self-executing" nature of § 523(a)(8). We, therefore, VACATE the portion of the bankruptcy court's ruling that is inconsistent with this decision and REMAND with instructions to the bankruptcy court to assess whether Creditors should be held in contempt for a violation of the discharge injunction.

## FACTS[2]

### A. Prepetition Events

Well prior to the commencement of Debtor's bankruptcy case, Debtor borrowed funds to pay for her higher education (the "Original Loan"). The Original Loan was serviced by Navient Solutions, Inc. ("Navient"). Subsequently, Debtor and Navient entered into an agreement whereby

---

[2] The parties have stipulated to the facts set forth herein. *See* Appellant's Br., p. 8; Appellees' Br., p. 4.

3

Debtor agreed to pay Navient $11,600 in exchange for Navient to consider the Original Loan settled in full.

To finance her litigation, negotiation, and settlement of the Original Loan, Debtor obtained a separate loan from 1600 West, a for-profit lender (the "Debt"). 1600 West later assigned the Debt to White Knight.[3]

## B.     Debtor's Bankruptcy Filing and the Adversary Proceeding

On May 1, 2020, Debtor filed a chapter 7 petition. On August 31, 2020, following the chapter 7 trustee's report of no distribution, Debtor received her chapter 7 discharge.

Almost immediately after Debtor received her discharge, Creditors, through their agent, continued their attempts to collect on the Debt. In response to these collection efforts, Debtor's counsel sent several emails and letters to Creditors' counsel, asserting that the Debt was discharged.[4] Notwithstanding these emails and letters, Creditors regularly contacted Debtor to demand payment on the Debt.

In February 2021, Debtor filed a complaint against Creditors, requesting: (i) a declaration that the Debt was discharged notwithstanding § 523(a)(8); (ii) contempt sanctions for Creditors' violation of the discharge injunction; and (iii) injunctive relief prohibiting further collection attempts by Creditors. Thereafter, Debtor filed a motion for summary judgment,

_____

[3] White Knight and 1600 West were member-managed by the same individual, Todd Westover.

[4] The emails and letters are not part of the record before the Panel.

4

requesting a judgment in her favor on all counts. The bankruptcy court denied the motion, holding that there was insufficient information in the record regarding the parties' factual dispute about whether the Original Loan was a qualified educational loan for purposes of § 523(a)(8); the bankruptcy court set the matter for trial.

After trial, the bankruptcy court issued a decision containing a thorough factual analysis of the detailed statutory requirements of § 523(a)(8), and ultimately finding that Creditors failed to establish the cost of attendance at Debtor's university or that Debtor's university was an eligible institution, as required by the statute. Thus, the bankruptcy court determined that Creditors failed to demonstrate that the Debt qualified as the type of debt described in § 523(a)(8) and, therefore, held that the Debt was discharged.

The bankruptcy court further held that, because § 523(a)(8) is "self-executing," the Debt was not discharged until Debtor obtained a judgment declaring that the Debt was discharged. As such, the bankruptcy court concluded that Creditors' post-discharge collection attempts did not violate the discharge injunction of § 524(a). Debtor timely appealed.[5]

### JURISDICTION

The bankruptcy court had jurisdiction under 28 U.S.C. §§ 1334 and 157(b)(2)(I). We have jurisdiction under 28 U.S.C. § 158.

---

[5] On appeal, Creditors do not dispute that the Debt was discharged on August 31, 2020, i.e., the date Debtor received her general discharge.

## ISSUE

Did the bankruptcy court err in holding that a debt that is dischargeable because it does not qualify as an educational loan under § 523(a)(8) is nevertheless considered nondischargeable until the debtor obtains a judgment of dischargeability, and that the lender is shielded from liability for violation of the discharge injunction until the court adjudicates the debt dischargeable?

## STANDARD OF REVIEW

The issue before the Panel is purely a question of law, which we review *de novo*. *Great Lakes Higher Educ. Corp. v. Pardee (In re Pardee)*, 218 B.R. 916, 919 (9th Cir. BAP 1998) ("We review conclusions of law, including the bankruptcy court's interpretation of the Bankruptcy Code, de novo."), *aff'd*, 193 F.3d 1083 (9th Cir. 1999). "*De novo* review is independent and gives no deference to the trial court's conclusion." *Roth v. Educ. Credit Mgmt. Corp. (In re Roth)*, 490 B.R. 908, 915 (9th Cir. BAP 2013).

## DISCUSSION

In chapter 7 cases, unless one of the grounds for denial of a discharge applies, "[t]he court **shall** grant the debtor a discharge. . . ." § 727(a) (emphasis added). "Except as provided in section 523," the discharge is of "all debts that arose before the date of the order for relief. . . ." § 727(b). To enforce the discharge, § 524(a)(2) "operates as an injunction against the commencement or continuation of an action, the employment of process, or an act, to collect, recover or offset any. . .[discharged] debt as a personal

6

liability of the debtor, whether or not discharge of such debt is waived[.]"
§ 524(a)(2).

Section 523(a) excepts several types of debts from the general discharge and provides two types of exceptions: "(1) those that are self-executing and (2) those that require the creditor to seek a determination of dischargeability in the bankruptcy court by a fixed deadline, failing which the exception does not apply and the debt is discharged." *Garcia v. Sklar (In re Sklar)*, 626 B.R. 750, 768 (Bankr. S.D.N.Y. 2021). Only three subsections of § 523 are **not** "self-executing" - § 523(a)(2), (a)(4), and (a)(6) – and thus require a complaint be filed by a creditor by a set deadline. § 523(c)(1); Rule 7001(6). Otherwise, a complaint for determination of dischargeability under the remaining subsections of § 523(a) may be brought at any time. Rule 4007(b); *see also In re Sklar*, 626 B.R. at 768.

Section 523(a)(8), which excepts from discharge certain types of educational debt, is one of the self-executing exceptions to discharge. *Hood*, 541 U.S. at 450. Under § 523(a)(8), debts that meet the detailed statutory requirements of § 523(a)(8)(A)(i), (A)(ii), or (B) are excepted from discharge "unless excepting such debt from discharge. . .would impose an undue hardship on the debtor and the debtor's dependents[.]"

The bankruptcy court, relying on *Hood*, interpreted this "self-executing" statutory scheme as excepting any debt that may, however tangentially, be covered by § 523(a)(8), unless and until the debtor affirmatively obtains a judgment of dischargeability. Respectfully, we do

7

not believe *Hood* resolves the issue before the Panel. As further discussed in section A, *Hood* analyzed the "undue hardship" exception to § 523(a)(8), not a loan's eligibility under § 523(a)(8). For purposes of this exception, Congress provided certain debtors an avenue for relief from **an otherwise nondischargeable debt** if such debtors meet the heavy factual burden of demonstrating "undue hardship." As explained below, the issues pertinent to the hardship determination are very different from those pertaining to whether a debt is statutorily excepted from discharge in the first place.

As discussed in section B, there is no binding authority addressing the specific issue before the Panel. However, as discussed in sections C and D, a review of statutory language, relevant case law from other jurisdictions, and policy leads the Panel to a different conclusion from the one reached by the bankruptcy court. We believe the phrase "self-executing," for purposes of § 523(a)(8), means simply that the parties are not required to initiate an adversary proceeding to determine the dischargeability of a debt. It does not mean that a debt that does not meet the statutory criteria of § 523(a)(8) is considered nondischargeable until proven otherwise.

This reading harmonizes §§ 523, 524, and 727 and gives full effect not only to § 523(a)(8), but the entire statutory discharge scheme contemplated by Congress. If a debt clearly falls under one of the "self-executing" subsections of § 523(a), a creditor need not suffer the time and expense of litigation to enforce the debt post-discharge. However, if it be determined

that a debt falls outside one of the "self-executing" subsections of § 523(a), and is thus dischargeable, creditors will not be shielded from the reach of the discharge injunction and the bankruptcy court's power to impose contempt sanctions when appropriate. In those circumstances, bankruptcy courts may assess, as they would with any other discharged debts, whether creditors acted with a "fair ground of doubt" in their interpretation of the discharge injunction. *Taggart v. Lorenzen*, 139 S.Ct. 1795, 1799 (2019).

## A. Supreme Court authorities on § 523(a)(8).

The Supreme Court has addressed § 523(a)(8) only twice, with both cases focusing on the "undue hardship" exception to the statute. *See Hood*, 541 U.S. 440; *and United Student Aid Funds, Inc. v. Espinosa*, 559 U.S. 260 (2010).[6] In *Hood*, after receiving her general discharge, the debtor sought a determination by the bankruptcy court that her student loans were dischargeable under the "undue hardship" exception to § 523(a)(8). *Hood*, 541 U.S. at 444-45. In response, the lender, a governmental corporation,

---

[6] Although *Espinosa* briefly addressed the "self-executing" nature of § 523(a)(8), that case involved a jurisdictional question, namely, whether an order confirming a chapter 13 plan that provided for the discharge of a student loan, without the requisite "undue hardship" determination under § 523(a)(8), was void under Civil Rule 60(b)(4). *Espinosa*, 559 U.S. at 263-64.

In *Espinosa*, the Court did not address whether the debt was a qualified educational loan under § 523(a)(8). Rather, presuming that it was a qualified loan, the Court held that the bankruptcy court's failure to make an "undue hardship" determination was not jurisdictional and, as a result, the confirmation order was not void for purposes of Civil Rule 60(b)(4). *Id.* at 274-75. In that context, the Court added in a footnote that, in *Hood*, the Court held that § 523(a)(8) was self-executing based on legislative history reflected in a senate report. *Id.* at 274 n.11. As such, *Espinosa* merely repeats language from *Hood* in a different context not relevant to this appeal.

filed a motion to dismiss the lawsuit, asserting that it was immune under the Eleventh Amendment. *Id.* at 445.

Although *Hood* involved the issue of sovereign immunity, the Supreme Court addressed the "self-executing" nature of § 523(a)(8) while analyzing the extent to which States are bound to a bankruptcy court's discharge order. *Id.* at 449-50. In discussing a previous version of § 523(a)(8),[7] the Court stated:

> Student loans used to be presumptively discharged in a general discharge. But in 1976, Congress provided a significant benefit to the States by making it more difficult for debtors to discharge student loan debts guaranteed by States. That benefit is currently governed by 11 U.S.C. § 523(a)(8), which provides that student loan debts guaranteed by governmental units are not included in a general discharge order **unless excepting the debt from the order would impose an "undue hardship" on the debtor**. *See also* § 727(b) (providing that a discharge under § 727(a) discharges the debtor from all prepetition debts except as listed in § 523(a)).
>
> Section 523(a)(8) is "self-executing." Norton § 47:52, at 47–137 to 47–138; *see also* S.Rep. No. 95–989, p. 79 (1978), U.S. Code Cong. & Admin. News 1978, 5787, 5864–5865. **Unless the debtor affirmatively secures a hardship determination**, the discharge order will not include a student loan debt. Norton § 47:52, at 47–137 to 47–138. Thus, the major difference between the discharge of a student loan debt and the discharge of most other debts is that governmental creditors, including States, that choose not to submit themselves to the court's jurisdiction

---

[7] Congress amended § 523(a)(8) in 2005, as part of its BAPCPA legislation. *Nunez v. Key Educ. Res./GLESI (In re Nunez)*, 527 B.R. 410, 413 (Bankr. D. Or. 2015).

**might** still receive some benefit: The debtor's personal liability on the loan **may** survive the discharge.

*Id.* (emphases added) (cleaned up).[8]

Two points may be gleaned from the emphasized language above. First, the Supreme Court ruled only on the "undue hardship" exception to § 523(a)(8), which warrants very different considerations and is not at issue in this case, as further discussed below. Second, the Court noted that creditors who choose not to file a nondischargeability lawsuit "**might**" receive a benefit in that the debt "**may**" survive the discharge. *Id.* at 450 (emphases added). This choice of language indicates that the Court did not interpret § 523(a)(8) as creating the type of categorical, *per se* rule contemplated by the bankruptcy court.

In other words, the Court did not hold that every debt with a loose connection to § 523(a)(8) should be considered nondischargeable until proven otherwise. Rather, the Court merely stated that debts that qualified as educational loans under § 523(a)(8) were nondischargeable unless or

---

[8] Both *Hood* and *Espinosa* relied on Senate Report No. 95-989 (the "Senate Report") for their analyses of the "self-executing" nature of § 523(a)(8). The Senate Report, which was generated in 1978 in connection with the passage of the Code, stated the following with respect to § 523(a)(8):

> Paragraph (8) follows generally current law and excepts from discharge student loans until such loans have been due and owing for five years. Such loans include direct student loans as well as insured and guaranteed loans. This provision is intended to be self-executing and the lender or institution is not required to file a complaint to determine the nondischargeability of any student loan.

S. REP. No. at 95-989, 79 (1978).

until the debtor made the requisite "undue hardship" showing. However, the Court provided little guidance regarding the relationship of the discharge injunction vis-à-vis a debt that is **not** qualified as an educational loan under § 523(a)(8). Consequently, *Hood* is not directly applicable to this appeal.

## B. Prior Panel decisions regarding the "self-executing" nature of § 523(a)(8).

For its part, the Ninth Circuit Court of Appeals has never addressed the self-executing nature of § 523(a)(8). Although this Panel has twice discussed the issue, both cases are of unclear relevance to the current case. *See Taylor v. U.S. Dep't of Just. (In re Taylor)*, BAP No. EC-11-1512-MkHKi, 2012 WL 1957984 (9th Cir. BAP May 31, 2012); *and Cal. State Univ. v. Gustafson (In re Gustafson)*, 111 B.R. 282, 284 (9th Cir. BAP 1990), *rev'd on other grounds*, 934 F.2d 216 (9th Cir. 1991).

In *Taylor*, post-discharge, the debtor requested sanctions against his lenders for attempting collection on his student loans. *In re Taylor*, 2012 WL 1957984, at *1. The debtor argued that, during his bankruptcy case, he had filed a declaration stating that excepting his student loans from discharge would cause him "undue hardship" and, as a result, the discharge order entered in his case discharged his student loans. *Id.* at *3-4. The Panel disagreed, holding that "[i]t is beyond cavil that student loan debt **covered by § 523(a)(8)**" is nondischargeable, "**unless and until the debtor obtains the bankruptcy court's determination that such debt is dischargeable**

12

**based on a court finding of undue hardship**." *Id.* at \*4 (emphases added).

Thus, much like *Hood*, *Taylor* also involved a debtor seeking

dischargeability under the "undue hardship" exception of a debt that was

otherwise "covered by § 523(a)(8)." *Id.*

In *Gustafson*, the Panel assessed whether the automatic stay applied

to a debt that was presumed, but not yet determined, to be

nondischargeable. *In re Gustafson*, 111 B.R. at 285. As part of this discussion,

the Panel noted that § 523(a)(8) is "self-executing and the burden is on the

debtor to bring a complaint to determine dischargeability of the debt." *Id.*

at 285 (citing *Buford v. Higher Educ. Assistance Found.*, 85 B.R. 579 (D. Kan.

1988)). Notwithstanding this principle, the Panel held that the automatic

stay barred creditors from collecting on the subject debt. *Id.* To reach this

conclusion, the Panel relied on the following policy:

> The purpose of the automatic stay is to give the debtor a
> breathing spell from his or her creditors and to relieve the
> financial pressures that drove him or her to bankruptcy. As
> such, the automatic stay is one of the most fundamental debtor
> protections provided by the bankruptcy laws. If the automatic
> stay is found to be inapplicable to debts that are presumed, but
> not determined, to be nondischargeable, this fundamental
> protection of the automatic stay could be lost even though the
> debt may ultimately turn out to be dischargeable. For example,
> a debtor may assert time bar and/or hardship defenses against a
> student loan creditor who seeks to establish the
> nondischargeability of the student loan obligation. If a debtor
> who has a valid time bar or hardship defense is contacted by a
> student loan creditor who disagrees with the validity of these

> defenses, the debtor will be forced to affirmatively seek a stay to prevent efforts to collect a debt that will ultimately be nondischargeable unless the automatic stay is applicable to efforts to collect presumptively nondischargeable debts. Such a result is contrary to the purposes of the automatic stay.

*Id.* at 286 (cleaned up).

In *Gustafson*, the Panel was clear that they were **not deciding** "whether the post-discharge injunction of section 524(a) applies to prevent acts to collect debts that are presumed, but not determined, to be nondischargeable under section 523(a)(8)." *Id.* at 286 n.4. As such, *Gustafson* is not binding authority. Nevertheless, the Panel's policy discussion sheds some light on the issues presented herein. As further discussed below, the discharge injunction is as fundamental a debtor protection as the automatic stay. *Marrama v. Citizens Bank of Mass.*, 549 U.S. 365, 367 (2007) ("The principal purpose of the Bankruptcy Code is to grant a fresh start to the honest but unfortunate debtor.") (cleaned up).

## C. A survey of relevant cases.

As is clear from the authorities cited above, in "undue hardship" cases, debtors do not receive a discharge of a qualified educational loan until they obtain a judgment from the bankruptcy court declaring the debt dischargeable. A vast majority of cases discussing the "self-executing" nature of § 523(a)(8) involve this "undue hardship" exception, and are therefore not applicable to this case. *See Rouse v. U.S. Dep't of Educ. (In re Rouse)*, No. 98-83504, 2002 WL 32001238, at *5 (Bankr. C.D. Ill. July 18, 2002)

14

(noting that "[m]any of the decisions that have followed the rule requiring a debtor to file an adversary proceeding before the loan can be discharged. . .involve the undue hardship exception" but "that same rule does not apply to" other litigation involving the applicability of § 523(a)(8)).

In cases where the "undue hardship" exception was not implicated, several courts outside this circuit have held that a debt that did not qualify for exception under § 523(a)(8) was discharged, along with all other dischargeable debts, at the time of debtor's general discharge. *See, e.g. McDaniel v. Navient Sols., LLC (In re McDaniel)*, 590 B.R. 537 (Bankr. D. Colo. 2018); *In re Haroon*, 313 B.R. 686 (Bankr. E.D. Va. 2004); *Homaidan v. Sallie Mae, Inc. (In re Homaidan)*, 650 B.R. 372 (Bankr. E.D.N.Y. 2022), *appeal dismissed sub nom. Navient Sols., LLC v. Homaidan*, No. 17-AP-1085(ESS), 2022 WL 17252459 (E.D.N.Y. Nov. 28, 2022); *Bannister v. Salle Mae Educ. Tr. (In re Bannister)*, No. 09-16875 (JLG), 2021 WL 219525 (Bankr. S.D.N.Y. Jan. 20, 2021).

The Panel finds these cases, which squarely address the issue presented in this appeal, persuasive. For instance, in *McDaniel*, after receiving their discharge, the debtors filed a complaint against Navient: (i) asserting that the debt owed to Navient was not excepted from discharge under § 523(a)(8); and (ii) requesting damages for Navient's violation of the discharge injunction under §§ 105 and 524. *McDaniel*, 590 B.R. at 541. The court first held that the subject debt did not qualify as an

15

educational loan for purposes of § 523(a)(8) and, as a result, was dischargeable. *Id.* at 551. In assessing whether debtors had stated a claim for violation of the discharge injunction, the court held:

> The Court concludes Plaintiffs have stated a valid claim for contempt. The Discharge Order and the statutory bases for its issuance and enforcement (Sections 1328 and 524(a)(2)) are broad and unequivocal. *All* debts were discharged, except those enumerated in Section 1328(a). There is no such thing as a personalized discharge order addressed to each creditor in a given bankruptcy case. That neither party sought to determine the dischargeability of the. . .[subject loans] until now does not alter whether or not the debts were discharged under Section 523(a)(8) at the time the Discharge Order was entered; thereafter they both proceeded at their own risk. Any ambiguity in the law, or uncertainty as to the injunction's applicability to the. . .[subject loans], is relevant to the inquiry as to whether any contempt violation, if proven, was willful.

*Id*. at 552 (emphasis in original).

Similarly, in *Haroon*, a debtor sued his student loan lender for violation of the discharge injunction. *Haroon*, 313 B.R. at 688. The primary argument before the court was whether the debtor or the lender bore the burden of proof as to dischargeability. *Id.* In parsing the relevant statutory scheme, the court determined:

> The better approach to determining the burden of proof is to look to sections 523, 524 and 727 all of which must be read together. Section 727(b) plainly states that all debts that arose before the date of the order of relief are discharged unless they fall within § 523. The plain language of Section 523(a) re-

enforces the broad discharge of § 727 by expressly limiting its effect. Section 524 then describes the effect of the discharge.

Generally, a creditor must file a complaint in the bankruptcy court during the pendency of the bankruptcy case to determine whether a debt falls within a § 523 exception. 11 U.S.C. § 523(c). If no complaint is timely filed, the exception is lost and the debt is discharged under § 727. This procedure is not applicable to all exceptions to discharge enumerated in § 523. One type of debt for which this procedure is not required is a student loan under § 523(a)(8).

*Id.* at 689. In light of this statutory structure, the court concluded that, although a "student loan creditor is not required to seek a dischargeability determination during the pendency of the bankruptcy case," the failure to obtain a judgment "does not alter the fact that the debt is or is not discharged upon entry of the discharge order." *Id.* "It merely avoids a judicial declaration of that fact at that time." *Id.*

The *Haroon* court was explicit about the consequences a lender may face by failing to obtain a nondischargeability judgment before attempting collection on a student loan:

[A] creditor who attempts to collect the debt proceeds at his own peril and accepts the consequences of his own actions. If a creditor wants to avoid the adverse consequences of an erroneous analysis, he can come to this court at any time, even after the case has been closed, and seek an adjudication of the dischargeability issue. If he fails to do that and seeks to collect the debt, the debtor may use a show cause order to have this determination made. If the creditor is wrong and the debt was discharged, he has violated § 524.

17

*Id.* (cleaned up).

Yet another court interpreted the term "self-executing," as it was used in legislative records, "as a means of distinguishing the application of Section 523(a)(8) from that of Sections 523(a)(2), 523(a)(4), 523(a)(6), and 523(c)." *Griffin v. U.S. (In re Griffin)*, 108 B.R. 717, 720 (Bankr. W.D. Mo. 1989). In other words, the *Griffin* court believed Congress simply intended to advise lenders that they were not required to file nondischargeability lawsuits within a specified time frame. However, "that does not mean that such debts are not discharged where" the debt fell outside the scope of § 523(a)(8)'s reach. *Id.*

Moreover, in numerous cases similar to this one, i.e., where a lender attempted collection of a debt after the debtor received a general discharge and the court subsequently held that the debt was not a qualified educational loan under § 523(a)(8), courts analyzed whether the lender should be held in contempt for violating the discharge injunction. Although these cases did not assess the self-executing nature of § 523(a)(8), their implicit holding is clear: where the debt never qualified as the type of nondischargeable debt covered by § 523(a)(8), it was discharged with all other dischargeable debts at the same time the debtor obtained a general discharge order. *See, e.g. In re Hazelton*, 622 B.R. 354 (Bankr. W.D. Wis. 2020); *In re Shuey*, 606 B.R. 760 (Bankr. N.D. Ill. 2019); *Nypaver v. Nypaver (In re Nypaver)*, 581 B.R. 431 (Bankr. W.D. Pa. 2018); *In re Moore*, 407 B.R. 855 (Bankr. E.D. Va. 2009).

**D. The bankruptcy court erred in holding that the Debt was not discharged until Debtor obtained the judgment of dischargeability from the bankruptcy court.**

In light of the above, if as the case law cited above suggests, the Debt was discharged by the general discharge order entered in Debtor's case, Creditors' post-discharge collection efforts must be scrutinized under the standard set forth in *Taggart*. 139 S.Ct. 1795. In *Taggart*, the Supreme Court held that creditors who violate the discharge injunction without a "fair ground of doubt as to whether the [discharge] order barred the creditor's conduct" are subject to contempt sanctions. *Taggart*, 139 S.Ct. at 1799.

Here, the bankruptcy court did not analyze whether Creditors had a "fair ground of doubt" about the dischargeability of the Debt when they attempted collection post-discharge. Instead, the bankruptcy court held that, because § 523(a)(8) is "self-executing," Debtor did not receive a discharge of the Debt until the court entered its judgment declaring the Debt dischargeable. We believe this holding runs contrary to the numerous authorities referenced above, and undermines the careful statutory discharge scheme set forth by Congress in §§ 523, 524, and 727.

We think a more prudent interpretation is that § 523(a)(8) is "self-executing" in the sense that neither party is required to file a lawsuit to determine the dischargeability of the debt. However, the lack of a determination does not change the nature of the debt. The debt is excepted from the general discharge order only if it actually qualifies as the type of

19

educational loan covered by § 523(a)(8). Otherwise, the debt is discharged with every other dischargeable debt. This interpretation harmonizes §§ 523, 524, and 727, such that only the specific debts enumerated by Congress are excepted from the general discharge.

First, the plain statutory language of § 727(a) and (b) mandates that the court "**shall**" grant a discharge – one discharge – of "**all** debts that arose before the date of the order for relief," and excepts only the debts set forth in § 523. § 727(a), (b) (emphases added). The exceptions in § 523(a) are detailed and specific, and the Supreme Court long ago established that they are meant to be narrowly construed. *Kawaauhau v. Geiger*, 523 U.S. 57, 58 (1998). Where a debt does not qualify as one of the narrow exceptions intended by Congress, section 524(a) is meant to operate as a sword and a shield for debtors harmed by creditors' post-discharge collection efforts.

Second, although the Senate Report referenced by *Hood* may at first glance lend itself to a broad interpretation that would be consistent with the bankruptcy court's conclusion here, such an interpretation would conflict with Congress's own strongly worded policy related to the discharge statutes, i.e., §§ 523, 524, and 727. In the same Senate Report on which the Supreme Court relied in *Hood*, Congress stated:

> At the heart of the fresh start provisions of the bankruptcy law is section 727 covering discharge. The discharge provisions require the court to grant the debtor a discharge of all his debts except for **very specific** and serious infractions on his part.

20

S. REP. No. 95-989, at 7 (1978) (emphasis added). The House of Representatives echoed the importance of the discharge provisions, stressing that "[t]he injunction is to give complete effect to the discharge and to eliminate any doubt concerning the effect of the discharge as a total prohibition on debt collection efforts." H.R. REP. No. 95-595, at 365 (1978). As is evident by both the plain statutory language and the Congressional reports, Congress intended to limit exceptions to discharge to the "very specific" exceptions set forth in the Code and strictly enforce the discharge with respect to debts that were not specifically excepted.

Contrary to the Code, the bankruptcy court's interpretation would protect lenders acting without a "fair ground of doubt" from the discharge injunction of § 524(a). *Taggart*, 139 S.Ct. at 1799. This interpretation also would lead to the absurd result that certain lenders would be barred from collecting payments while the automatic stay is in effect, *see Gustafson*, 111 B.R. at 285, and barred from collecting payments after the court deems the debt dischargeable, but enjoy a gap period between the lifting of the automatic stay and entry of the judgment of dischargeability to collect on the debt as they please without any obligation to reimburse the debtor or face contempt sanctions. This is not what the Code provides, and cannot be what Congress intended.

While it is true that the Senate Report reflects Congress's intent to relieve student loan lenders from the burden of filing a lawsuit, our interpretation does not conflict with that intent. If a debt is clearly within

21

the § 523(a)(8) exception, lenders need not ever initiate a lawsuit; if there is a "fair ground of doubt" about whether the debt is excepted, lenders are protected from contempt sanctions by *Taggart*; and, in cases where the debt clearly falls outside § 523(a)(8), lenders are appropriately subject to sanctions because Congress never intended to except those debts in the first place. In any event, a lender who wants a firm resolution may file a lawsuit and obtain a judgment at any time.

To be sure, many cases discussing the "undue hardship" exception to § 523(a)(8) have employed broad, all-encompassing language regarding the "self-executing" nature of § 523(a)(8). *See, e.g. Easterling v. Collecto, Inc.*, 692 F.3d 229, 231 (2d Cir. 2012) ("Student loans are presumptively nondischargeable in bankruptcy."). However, the fact that these cases involved the "undue hardship" exception place them in a completely different procedural posture than the instant case.

"Undue hardship" cases are unique because they are circumstantial, and circumstances change; a debtor may reopen her case and seek an "undue hardship" determination based on changed circumstances at any time. *Walker v. Sallie Mae Serv. Corp. (In re Walker)*, 427 B.R. 471, 480 (8th Cir. BAP 2010). Moreover, the debtor is the party who has the necessary evidence regarding his or her "undue hardship." In such cases, the only logical framework is to place the burden on the debtor to prove the type of "undue hardship" that would relieve the debtor from the burden of an otherwise nondischargeable debt.

The nature of the student loan and whether it qualifies as an excepted loan, on the other hand, is static – either the loan satisfies the statutory criteria set forth in § 523(a)(8) or it does not. As such, it is either excepted from the general discharge order or it is not. *See In re McDaniel*, 590 B.R. at 552 ("There is no such thing as a personalized discharge order addressed to each creditor in a given bankruptcy case."); *and In re Haroon*, 313 B.R. at 689 ("The failure to seek a dischargeability determination does not alter the fact that the debt is or is not discharged upon entry of the discharge order.").

For the reasons stated above, based on the bankruptcy court's determination that the Debt did not qualify as the type of debt excepted from discharge under § 523(a)(8), the Debt was discharged on August 31, 2020, at the time the court entered its discharge order.

Although the parties argue on appeal whether Creditors acted with a "fair ground of doubt" when they violated the discharge injunction, that issue is not properly before the Panel. The bankruptcy court did not make findings regarding Creditors' "fair ground of doubt."[9] On remand, the bankruptcy court must make appropriate findings regarding whether Creditors violated the discharge injunction without a "fair ground of doubt," as required by the Supreme Court in *Taggart*, 139 S.Ct. at 1799, and determine the appropriate amount of sanctions for such a violation, if any.

---

[9] In addition, as noted above, the record before the Panel does not contain any information relevant to a determination regarding Creditors' "fair ground of doubt," such as the content of the letters and emails informing Creditors of the effect of Debtor's discharge and Creditors' response to those communications.

**CONCLUSION**

For the reasons set forth above, we VACATE the portion of the bankruptcy court's ruling that is inconsistent with this decision and REMAND with instructions for the bankruptcy court to make findings regarding whether Creditors violated the discharge injunction without "a fair ground of doubt."